WILLIAM E. WEISS (SBN 73108)
LAW OFFICES OF WILLIAM E. WEISS
130 Sutter Street, 7th Floor
San Francisco, California 94104
Telephone:     (415) 362-6765
Facsimile:     (415) 362-2405
Email:         weisslaw1@williameweiss.com
Attorneys for Defendant,
PRINCE OF PEACE BAPTIST CHURCH

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASTOR WALTER HUMPHREY<br><br>        Plaintiff,<br><br>vs.<br><br>PRINCE OF PEACE BAPTIST CHURCH, and DOES 1-25,<br><br>        Defendants. | Case No. C 07-02790 WHA<br><br>**DEFENDANT PRINCE OF PEACE BAPTIST CHURCH'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>**Date:  November 29, 2007**<br>**Time:  8:00 a.m.**<br>**Place: Courtroom 9, 19th Floor**<br>**        450 Golden Gate Avenue,**<br>**        San Francisco, CA 94102**<br>**Judge: Hon. William Alsup** |

## SYNOPSIS

Plaintiff filed his complaint in this court for breach of an alleged employment agreement with defendant POP Baptist Church, which is located in Akron, Ohio. Plaintiff was an acquaintance of the late Rev. Dr. John Milton Burrell, who was a pastor at the defendant church, but who did not have any authority to hire anyone or offer them employment. The Rev. Burrell told the defendant church members he wanted plaintiff to be the pastor and held a vote of the congregation without having the Deacons approve the hiring. There was not a majority vote of the congregation and The Rev. Burrell had the church clerk, Dolores Henderson, send a letter offering the job to plaintiff. Mr. Humphrey worked at the defendant church in Ohio. Virtually all

the witnesses concerning his hiring and termination are in Ohio. The only contact with this state was apparently a letter from defendant confirming his employment and maybe some telephone calls.

The circumstances concerning plaintiff's separation from defendant are inextricably bound to matters of doctrine and philosophy of defendant church.

Defendant brings this motion on four grounds: 1. Lack of personal jurisdiction pursuant to FRCP 12(b)(2) -based on the fact that plaintiff's employment, virtually all conduct complained of and all witnesses are in Ohio. 2. Improper venue pursuant to FRCP 12(b)(3), which should be in Ohio for the reasons stated above. 3. Constitutional principles prohibit civil court inquiry into matters affecting a minister's employment, among other things, pursuant to the First Amendment. This argument is pursuant to FRCP 12(b)(6) in that there is no cognizable legal theory under which plaintiff may recover. This is supported by U.S. Supreme Court cases, cases from the 9th Circuit Court of Appeals, California law and Ohio law. 4. Failure to allege the proper amount in controversy for diversity jurisdiction pursuant to FRCP(1).

Even though the plaintiff alleges that money is owed him and the defendant would and could allege various financial improprieties on plaintiff's part, there is no need to reach those issues as the lack of jurisdiction, improper venue and especially the weight of authority against interfering in church matters argues strongly for dismissal of the entire complaint.

## STATEMENT OF FACTS

Defendant is a Baptist Church that is self-governing with its own regulations which, according to its principles also is guided by the New Testament. Its Constitution states in pertinent part: "… and that each local church, being left at liberty to make such regulations, additional to those found in the New Testament, and in harmony with those principles in the New Testament, and unto its situation and circumstances, relying upon the guidance of the Holy Spirit and for the promotion of the Kingdom of Christ, the practice of brotherly love, growth in grace, a true spiritual development and for the accomplishment of the grand design for which the church was established on earth, we, the members of the Prince of Peace Baptist Church of Akron Ohio, Incorporated, adopt the following constitution for our guidance and government."

**DEFENDANT PRINCE OF PEACE BAPTIST CHURCH'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - Case No. C 07-02790 WHA**

1   (See Church Constitution Ex. A to Declaration of Russel Neal, Sr.)

2           The constitution sets out the doctrine of faith. Especially relevant to this case is section

3   6, which states as part of said doctrine is the belief in having " A divine and qualified minister."

4   The constitution states the qualifications necessary to be a Pastor of said church in Article IX.

5   This Article also sets out the type of relationship the pastor and church shall have including

6   employment.

7           The plaintiff was a pastor residing in Oakland, California who was apparently acquainted

8   with a member of defendant church, the late Rev. Dr. John Milton Burrell. Plaintiff was an

9   acquaintance of the late Rev. Dr. John Milton Burrell, who was a pastor at the defendant church,

10  but who did not have any authority to hire anyone or offer them employment. The Rev. Burrell

11  told the defendant church members he wanted plaintiff to be the pastor and held a vote of the

12  congregation without having the Deacons approve the hiring. There was not a majority vote of

13  the congregation and The Rev. Burrell had the church clerk Dolores Henderson send a letter

14  offering the job to plaintiff. (Ex. D to Declaration of Russell Neal, Sr.) The hiring was

15  accomplished by an election of the church membership, which was phrased in terms or being

16  called as a pastor for life. It is noteworthy that the defendant uses the term "called" because it

17  denotes the ecclesiastical nature of the position. Plaintiff was notified of this offer to serve as

18  pastor by letter dated October 8, 2004. He agreed to immediately terminate his relationship with

19  the Mariah Baptist Church in Oakland and move to Ohio to begin his new position.

20          Following his appointment as pastor, he became the subject of controversy because of

21  financial improprieties and because he failed to appear for 40 out of 52 weeks of the year at the

22  church. Evidently he was also held a position in a church in Oakland, California. It was

23  understood by defendant that if called as a pastor that plaintiff would move to Ohio and fulfill his

24  obligations of leading the congregation. This absence posed a tremendous burden on the church

25  because plaintiff was not available for funerals, marriage ceremonies, baptisms, personal pastoral

26  counseling, weekly Bible study and prayer services, nor was he available to meet with different

27  auxiliaries and provide pastoral leadership. Moreover, the defendant was a church without a

28  pastor for approximately 40 weeks of the calendar year.

**DEFENDANT PRINCE OF PEACE BAPTIST CHURCH'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - Case No. C 07-02790 WHA**

The plaintiff appointed people to serve as administrative assistants and on a task force to handle matters while he was absent. This caused a great deal of controversy within the membership as members wanted to be lead by a pastor and not administrative assistants or a task force. In notes of a meeting on this subject (Ex. C to Declaration of Russel Neal, Sr.) it was expressed that the pastor needs to demonstrate faith and to fulfill his calling. The distress reached the point where the Deacons of the defendant wrote a letter to the Progressive National Baptist Convention for help in establishing order within the defendant church. (Ex. D to Declaration of Russell Neal, Sr.) The deacons also drafted a letter of April 28, 2006 to the membership of the church for consent to take action. (Ex. B to the Declaration of Russel Neal, Sr.) Plaintiff's relationship with the church was terminated in late June 2006 amid a division of the church membership and legal action in Ohio resulting from plaintiff changing the locks on the church and talking other actions inimical to the church.

## A. THE PLAINTIFF LACKS PERSONAL JURISDICTION OVER DEFENDANT PRINCE OF PEACE BAPTIST CHURCH

Plaintiff's sole claim for personal jurisdiction is that the contract of employment was negotiated and entered into in California. The declaration of Russell Neal, Sr. and the exhibits attached thereto demonstrate that this is clearly false. Further, the "Facts" section of the complaint fails to mention anything about the contract being negotiated and entered into in the Northern District of California or anywhere in California for that matter. Paragraph 13, page 5 of the complaint mentions plaintiff received a letter, dated October 8, 2004, confirming his appointment at the defendant church. The complaint fails to even mention to what address this letter was addressed and where it was received. Except for the bare allegation in paragraph 2, page 3 of the complaint that the negotiations and hiring took place in Oakland, California the whole complaint studiously avoids any mention of the facts concerning plaintiff's hiring. At best this construction of the complaint is a sophistic trick to establish personal jurisdiction where there is none.

Motions to test the plaintiff's theory of jurisdiction or facts come within the gravitational pull of FRCP 12(b)(2). The court may determine whether the alleged facts, if true, are sufficient to establish jurisdiction *Credit Lyonnais Securities (USA), Inc., v. Alcantara* 183 F3d 151, 153

DEFENDANT PRINCE OF PEACE BAPTIST CHURCH'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - Case No. C 07-02790 WHA

(2d Cir. 1999) or if the facts are challenged, as they are here, the 12(b)(2) motion must be decided on the basis of competent evidence such as declarations. *Data Disc. Inc. v. Systems Technology Assocs., Inc.* 557 F2d 1280, 1289, fn. 5 (9th Cir. 1977). The court cannot assume the truth of allegations in a pleading that is contradicted by a sworn affidavit. See *Data Disc., supra* at 1284. While normally plaintiff must only make a prima facie showing that personal jurisdiction exists if there is no evidentiary hearing (*Ballard v. Savage* 65 F3d 1495, 1498 (9th Cir. 1995)); an evidentiary hearing requires that plaintiff establish by a preponderance of the evidence the existence of minimum contacts. *Rano v. Sipa Press, Inc.* 987 F2d 580, 587 fn.3 (9th Cir. 1993).

Defendant was never present in the State of California and was not served in California. Absent one of the traditional bases for jurisdiction such as presence, domicile, or consent, due process requires that the defendant have certain minimum contacts with the forum state so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington* 326 U.S. 310, 316 (1945). The purpose of minimum contacts is to protect the defendant against the burden of litigating at a distant or inconvenient forum and insures that states do not reach beyond the limits of their sovereignty imposed by their status in a federal courtroom. *World-Wide Volkswagen Corp. v. Woodson* 444 U.S. 286. 291 (1980). These contacts must be assessed individually. *Calder v. Jones* 465 U.S. 783 (1984).

A party who relies upon the authority of an agent to establish jurisdiction over the employer has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority. *Romak USA, Inc. v. Rich* 384 F3d 979, 985 (8th Cir. 2004).

Defendant did not purposefully avail itself of significant benefits of the forum state (*Burger King Corp. v. Rudzewicz* 471 U.S. 462, 477-478 (1985)), did not have a substantial connection to the forum state, nor did it have continuous contacts with California. In fact, insofar as this case is concerned it had no contacts.

The defendant church has about 200 members, all located in Ohio. Every critical witness on the hiring and termination of plaintiff is in Ohio. The church is in Akron, Ohio. If plaintiff were able to maintain this case here it would tremendously disadvantage the defendant and it is constitutionally unreasonable. "The law of personal jurisdiction is asymmetrical and is primarily

concerned with the defendant's burden. *Terracom v. Valley Nat'l Bank* 49 F3d 555, 561 (9th Cir. 1995).

Plaintiff's filing of the suit here is meant to inconvenience the defendant in hopes of forcing a settlement and for no other reason. That much is apparent from the absence of any facts in the complaint demonstrating minimum contacts with this forum. No liability producing acts occurred in this state that have foreseeable consequences here. *Burger King, supra*, at 479-480. The fact that a non-resident enters the forum state to execute or perform a contract with a resident does not per se establish minimum contacts. *Gray & Co. v. Firstenberg Machinery Co.* 913 F2d 758, 760 (9th Cir. 1990). Where both act and injury occur outside the forum state there may not be sufficient contacts to support local jurisdiction over a non-resident *Scott v. Breeland* 792 F2d 925, 927-928 (9th Cir. 1986).

**B.  VENUE IS IMPROPER IN THIS DISTRICT**

As shown above, defendant had no purposeful contacts with this state, especially within the jurisdiction of this court. All defendant's witnesses are in Ohio, Defendant is a church located in Akron, Ohio. Plaintiff's employment was in Ohio and the critical acts concerning his employment as a Pastor took place in Ohio. The performance of his contract was to be done in Ohio. All this being true, it is hard to understand how the Northern District of California could be the proper venue. FRCP 12(b)(3) permits a defendant to raise improper venue issues.

Venue for diversity cases is governed by 28 USC § 1391(a). Venue for diversity is proper only if all defendants reside in the same state, or in a district in which a substantial part of the events or omissions on which the claim is based occurred or where a substantial part of the property that is the subject of the action is located. 28 USC § 1391(a)(2). If there is no jurisdiction where the action may be brought then a district where the defendant is subject to personal jurisdiction at the time the action was commenced. 28 USC § 1391(a)(3).

If this case were to proceed, it would have to be venued in Ohio. However, the fact that there is a First Amendment issue means the entire case should be dismissed with prejudice.

A court may transfer an action under 28 USC § 1406(a) even though it lacks jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman* 369 US 463, 466 (1962).

**DEFENDANT PRINCE OF PEACE BAPTIST CHURCH'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - Case No. C 07-02790 WHA**

1
2
3
4
5

If venue is challenged, plaintiff bears the burden of establishing that venue is proper in the forum. *Airola v. King* 505 F. Supp. 30,31 (D AZ 1980). If venue is found to be improper, the court must either dismiss for lack of venue or transfer the case to any district in which it could have been brought. 28 USC§ 1406(a). *Johnson v. Payless Drug Stores Northwest, Inc*. 950 F2d 586, 588 (9th Cir. 1991).

6
7
8
9

28 USC 1404(a) allows discretionary transfer for convenience of witnesses and in the interests of justice. Under this section the defendant has the burden of showing the convenience of parties and witnesses. *Commodity Futures Trading Comm'n v. Savage* 611 F2d 270, 279 (9th Cir. 1979).

10
11

Based on the evidence and plaintiff's complaint this case should be dismissed for improper venue.

12
13

**C.  THE FIRST AMENDMENT MANDATES DISMISSAL OF THE ENTIRE ACTION WITH PREJUDICE BECAUSE CONSTITUTIONAL PRINCIPLES PROHIBIT CIVIL COURT INQUIRY INTO MATTERS AFFECTING A MINISTER'S EMPLOYMENT**

14
15
16
17
18
19
20

This section is based on FRCP 12(b)(6). The complaint fails to state a cause of action against defendant because the subject matter is essentially ecclesiastical and civil courts, as a rule, do not extend, their reach into that area. This is a First Amendment issue. FRCP 12(b)(6) goes usually to the face of the complaint unless the court looks at extrinsic materials as well. *Arpin v. Santa Clara Valley Transp. Agency* 261 F3d 912, 925 (9th Cir. 2001). The court must accept all material allegations as true as well as reasonable inferences drawn therefrom. *Pareto v. FDIC* 139 F3d 696, 699 (9th Cir. 1998).

21
22
23
24
25
26
27
28

The court has discretion to consider evidence outside the pleadings, "…preferably by an explicit ruling that it will not exclude those materials from its consideration." *Swedborg v. Marotzke* 339 F3d 1139, 1146 (9th Cir. 2003). In this case the court is requested to review documents such as the church constitution and minutes of meeting and resolutions of the church deacons to understand the ecclesiastical nature of this matter. It will conserve judicial and the parties' resources to handle this now rather than later since there is no controversy that the plaintiff's claim involves questions of inner church workings and ecclesiastical matters. Furthermore, plaintiff's complaint drives this point home. For example, paragraph 11, page 4 of

7

1  the complaint mentions how plaintiff was elected as pastor of the church and given a life-time

2  tenure. Paragraph 14, page 5:13-15 of the complaint points out that, "…Pastor Humphrey began

3  a dedicated and spirited pasturing of the Church. Pastor Humphrey increased the membership of

4  the church, its finances, installed a new choir…"

5  Paragraph 15, page 5 of the complaint refers to controversy about whether plaintiff was

6  doing everything he could to spiritually and physically lead the church. It also points out that a

7  clash over his leadership arose. The remaining facts focus on the pastoral leadership complaints

8  of disgruntled church members.

9  The church constitution (Ex. A to the declaration of Russell Neal, Sr.) states the doctrine

10  of faith of defendant as well as stating the church's purpose of maintaining spiritual worship

11  through preaching and teaching of God's word and for the strengthening and edifying of one

12  another in faith; developing the Christian life and spreading of the Kingdom of God through

13  evangelism, home and missionary endeavor and Christian education.

14  Ex. B to the declaration of Russell Neal, Sr. is a document stating the concern of the

15  deacons about the plaintiff not fulfilling his obligations because he was continually absent from

16  the pulpit and that plaintiff is not bringing harmony to the membership of the church.

17  Ex. C to the declaration of Russell Neal, Sr. records a meeting of January 16, 2006

18  wherein the question was raised whether plaintiff was going to pastor the defendant church or

19  another church. It was stated in this document that, "The Sunday school lesson was about calling

20  a pastor. Maybe we should repeat the lesson on this Sunday. The Bishop or pastor is over one

21  church. One thing the lesson said was that the pastor needs to demonstrate faith. Pastor

22  Humphrey needs to demonstrate faith." The rest of the document discusses the need to have the

23  church decide.

24  Ex. D to the declaration of Russell Neal, Sr. is a document dated March 11, 2006 to the

25  Rev. Tyrone Pitts, executive Secretary of the Progressive National Baptist Convention asking for

26  guidance and help resolving the issues of plaintiff's absence and his financial demands. As

27  pointed out above, the plaintiff's presence was necessary not just to lead services but also to be

28  available for funerals, marriage ceremonies, baptisms, personal pastoral counseling, and weekly

Bible study and prayer services; for meetings with different auxiliaries and to provide pastoral

8

leadership. Moreover, the defendant was a church without a pastor for approximately 40 weeks of the calendar year.

It is clear that the employment and ultimate termination of the plaintiff are bound up in ecclesiastical matters central to the functioning of the defendant church.

From the U.S. Supreme Court to the 9th Circuit to California case law to Ohio case law the rule is clear: The First Amendment protects the Free Exercise and Establishment Clause rights of religious institutions in their church administration, operation and selection of clergy.

For example, in *Watson v. Jones* 80 US (13 Wall) 679, 727 (1871) the U.S. Supreme Court held that church decisions on questions of discipline, or of faith, or ecclesiastical rule, custom or law are final. In *Gonzales v. Roman Catholic Archbishop* 280 U.S. 1, 16 (1929) the court found: "it is the function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them." In *Serbian E. Orthodox Diocese v. Milivojevich* 426 U.S. 696, 713, 717 (1976) the court held: " religious controversies are not the proper subject of civil court inquiry and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them." The *Serbian* case, supra focused on a protracted dispute over control of the Serbian Eastern Orthodox Diocese for the United States and Canada. The Holy Assembly of Bishops and the Holy Synod of the Serbian Orthodox Church suspended and ultimately removed and defrocked the Bishop Dionisije. The fight over control spiritually and of church assets ended up in court. The opinion, delivered by Justice Brennan traces the law on the subject and points out how the court should not get involved.

Under diversity jurisdiction the court looks to the substantive law of the forum state. *Walker v. Armco Steel* 446 U.S. 740, 750 (1980), *Erie Railroad Co. v. Tompkins* 304 U.S. 64, 78 (1938). While defendant in no way concedes that personal jurisdiction exists herein, if the court did look at California law plaintiff would find no refuge.

For example, *Schmoll v. Chapman University* 70 Cal App.4th 1434 (1999) states: "It matters not whether such an action involves the hiring, firing or discipline or simply changes in the terms and conditions of the employment. The rule is about as absolute as a rule of law can be: The First Amendment guarantees to a religious institution the right to decide matters affecting its minister's employment. Free from the scrutiny and second guessing of the civil courts." The

9

*Schmoll* court, supra at 1439 cites with approval *Rayburn v. General Conf. Of Seventh Day Adventists* 772 F2d 1164, 1169 (4th Cir. 1985) as follows: " As a general rule, if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in a religious ritual and worship, he or she should be considered clergy."

In Schmoll, supra at 1442 the court further cites *Rayburn* "Bureaucratic suggestion in employment decisions of a pastoral character, in contravention of a church's own perception of its needs and purposes would constitute unprecedented entanglement with religious authority and compromise the premise that both religion and government can best work to achieve their lofty aims if each is left free of the other within its respective sphere."

If the court decided, on a conflict of law basis, to apply Ohio law plaintiff would fare no better. In *Tibbs v. Kendrick* 93 Ohio App.3d 35 (1994), the court held a church member's action based on the board's failure to terminate the pastor was properly dismissed for lack of subject matter jurisdiction because inquiry into who would preach from the pulpit was an ecclesiastical question outside the court's jurisdiction. Finally, in *Turchyn v. Nakonachnv* 157 Ohio App.3d 284 (2004), the court ruled that the trial court lacked subject matter jurisdiction to adjudicate a spiritual suspension prohibiting a parishioner from taking Holy Communion as it was an ecclesiastical matter.

The U.S. Court of Appeals for the Ninth Circuit similarly takes a dim view of interfering in church matters. In *Bollard v. Society of Jesus* 211 F3d 1331 (9th Cir. 2000) the court, in decision in a Title VII case ruled that the court should let the church manage its religious affairs free of governmental interference. The plaintiff there had complained that the Jesuits prevented him from becoming a Jesuit priest by failing to address his alleged sexual harassment. The court said this directly implicates the minister-church relationship-an undisputed matter of core ecclesiastical concern. See also *EEOC v. Pacific Press Pub'g Ass'n* 676 F2d 1272, 1278 (9th Cir. 1982).

In sum, this case should be dismissed with prejudice because there is no legally available cause of action to address plaintiff's case. His claims squarely fall within the First Amendment restrictions expressed in the opinions above.

10

**DEFENDANT PRINCE OF PEACE BAPTIST CHURCH'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - Case No. C 07-02790 WHA**

**D. PLAINTIFF FAILED TO ALLEGE A SUFFICIENT AMOUNT IN CONTROVERSY TO SUSTAIN A DIVERSITY CASE**

The amount in controversy necessary for a diversity case is $75,000. 28 USC §1332(a). Thus this section of the brief relies on FRCP 12(b)(1) as a facial attack. See *Rilling v. Burlington R.R. Co.* 909 F2d 399, 401 (9th Cir. 1990).

Paragraph 1, page 3 of the complaint alleges the amount in controversy is "over $10,000."

<u>CONCLUSION</u>

There is no personal jurisdiction as all the relevant matters, the negotiations, the witnesses, the defendant's location and the alleged wrongful acts took place in Ohio and defendant did not in any way have minimum contacts with this district or California. Clearly this case was filed to inconvenience the defendant and force it to settle by requiring it to litigate the case thousands of miles away. For the same reasons venue is improper.

Most importantly, this claim fails to state a basis for relief as it is barred by the First Amendment Free Exercise and Establishment clauses.

Finally, plaintiff as not alleged a sufficient amount in controversy to make a diversity case.

The court is requested to dismiss the complaint with prejudice.

DATED: October 17, 2007                    LAW OFFICES OF WILLIAM E. WEISS


By_____/s/_____
     William E. Weiss, Esq.
     Attorney for Defendant,
     Prince of Peace Baptist Church

DEFENDANT PRINCE OF PEACE BAPTIST CHURCH'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - Case No. C 07-02790 WHA