1  DOROTHY D. GUILLORY
   Attorney at Law, CSBN 114891
2  1271 Washington Avenue, #380
   San Leandro, CA 94577
3  (5l0) 639-2959
   Fax: (5l0) 639-2961

4

5  Attorney for Plaintiff
   PASTOR WALTER HUMPHREY

6

7                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
8

9  PASTOR WALTER HUMPHREY,            Case No. C 07-02790 WHA

10      Plaintiff,                    DECLARATION OF REV.
                                      WALTER HUMPHREY IN
11                                    OPPOSITION TO DEFENDANT'S
                                      MOTION TO DISMISS
12      v.

13
   PRINCE OF PEACE BAPTIST CHURCH,    Date:  November 29, 2007
14                                    Time:  8:00 a.m.
        Defendant.                    Place:  Courtroom 9, 19th Floor
15  _____/  Hon. William H. Alsup

16
   I, PASTOR WALTER HUMPREY, make this declaration as follows:
17
        1.      I have personal knowledge of the following matters, and can attest to them
18
   if called upon to do so.
19
        2.      My wife, Shari Humphrey, and I presently reside in Hercules, California.
20
   I have been a California resident since 1977, and I have no intention of moving my
21
   residence from the State of California.  I have owned homes in Oakland and Pittsburg,
22
   California.
23
        3.       For the past twenty-five (25) years, I have served as Pastor of the Moriah
24
   Christian Fellowship Baptist Church in Oakland, California, a 500+ member church.  The
25
   church was formerly named White Oak Grove Baptist Church.  In 1996, under my
26

   Pastor Humphrey Declr., p. 1
27

28

1  leadership, the church built a new edifice and expanded its ministries.

2        4.      For the past seven years, I have been Vice-President of Agape Trucking

3  Company, an organization aimed at reducing recidivism and helping ex-offenders by

4  hiring parolees released from prison to give them an opportunity to gain employment and

5  become contributing members of society.  The trucking company is operated out of

6  Oakland, California.

7        5.      Since 2003, I have been Chairman of the National Coalition of Clergy and

8  Community Together, a faith-based initiatives program supported by the current

9  administration.  In this capacity, I have met with President Bush and members of his

10  cabinet in Washington, D.C., I have traveled nationwide, meeting and brainstorming with

11  third world leaders, administration officials, state officials, and local leaders concerning

12  inner-city development.  The hub of my faith-based initiatives work is located in

13  Oakland, California.

14        6.      In early 2003, I founded the Bay Area Inner City Leadership Alliance, a

15  faith and community-based organization focusing on strengthening marriage and families

16  and mentoring ex-offenders through the provision of 24/7 clean and sober living

17  facilities.  The program is operated in cooperation with the U.S. Department of Justice

18  Office of Community Policing Services.  The principal place of business for the Bay

19  Area Inner City Leadership Alliance is in Oakland, California.

20        7.      Attached as Exhibit A are copies of newspaper articles concerning Agape

21  Trucking, the Bay Area Inner City Leadership Alliance, and my faith-based community

22  work locally and nationally.

23        8.      Attached as Exhibit B are pictures attesting to my meetings and

24  involvement with President Bush, administration officials, governors, local leaders and

25  their staff concerning faith-based initiatives.

26        9.      In the year 1991, I met the now deceased founding Pastor of Prince of

27  Pastor Humphrey Declr., p. 2

28

1  Peace Baptist Church, Rev. Dr. Milton Burrell at a city-wide revival in Ohio.  I was on

2  program to preach during that revival, and after my sermon, Rev. Burrell came up to me

3  and introduced himself as the organizer of Prince of Peace Baptist Church in Akron,

4  Ohio.  Rev. Burrell described Prince of Peace Baptist Church as a 300-member

5  congregation, and he related that he was well respected by the members as founder and

6  Pastor.  Rev. Burrell and I kept in communication by telephone, and we would see each

7  other at various church-related events over the years.

8        10.    In August, 2003, Rev.  Burrell called me in California and indicated that

9  he was coming to California to discuss the prospect of his church hiring me to become

10  his successor as Pastor.  Rev. Burrell was over 80 years of age at the time, he had

11  undergone  cancer surgery, was in ill health and wanted to appoint a successor for the

12  church he founded.  On this occasion, Rev. Burrell stayed at the Woodfin Hotel in

13  Emeryville at least four days and was in contact with me each and every day, trying to

14  convince me that I should accept the job.  Rev.  Burrell explained that I wasn't his first

15  choice, but I was his second choice.  He had initially solicited Rev. Tellis Chapman,

16  Pastor of Galilee Baptist Church in Detroit, Michigan.  However, Pastor Chapman could

17  not confirm that it was God's will that he accept the offer, so Rev. Burrell started

18  pursuing me as a candidate.

19        11.    During the four days that he was in California in August, 2003, Rev.

20  Burrell met with me and my wife Shari, one of my Assistant Pastors at Moriah, Clarence

21  Payne, and Elder Cleveland Jordan, discussing the need for a qualified Pastor to replace

22  him at Prince of Peace, and describing the financial incentives that the church could offer

23  me to induce me to accept employment as Pastor of Prince of Peace.  Rev. Burrell related

24  that the church had supported him with a generous financial package, and that

25  his church was ready to make a similar offer to me.  I explained to Rev. Burrell that I

26  would consider his offer but I didn't accept the offer of employment on this occasion.  I

27  had my hands full with pastoral responsibilities at Moriah, with my trucking company,

28

and with my involvement in the faith and community-based projects I was conducting through the National Coalition of Clergy and Community Together, and the Bay Area Inner City Leadership Alliance in California.

12.     In the summer of 2004, Rev. Burrell again came to California to meet with me about accepting employment as Pastor of Prince of Peace.  He explained that his health was steadily deteriorating, that he needed to transition me in as a co-Pastor, then senior Pastor and then Pastor before he resigned due to ill health.  I believe that Rev. Burrell stayed at the Marriott in Oakland for several days, during which period of time he met with me several times to convince me to accept an offer of employment from Prince of Peace.  During this second visit, he called from California to Ohio, got Russell Neal on the phone, and the three of us talked about a financial package that would be acceptable to me.  I specifically told both Rev. Burrell and Russell Neal that because of the responsibilities that I had in California, serving as Pastor of Moriah, and as head of the various organizations I operating in California, I could only devote part of my time to serving as Pastor of Prince of Peace.  This was acceptable to both of them.  The three of us then negotiated an annual salary which was to be no less than $85,000.  Based on a verbal offer of employment with a financial package of $85,000 from Rev. Burrell and Mr. Neal, I accepted employment with Prince of Peace Baptist Church during the last meeting with Rev. Burrell in Oakland, California.  I believe that Rev. Burrell delivered a sermon at Moriah on the Sunday after we consummated our agreement.

13.     In June, 2004, I began employment on at Prince of Peace as the co-Pastor, working with Rev. Burrell.  I assisted Rev. Burrell with pastoral duties and served as co-Pastor until October, 2005, when Rev. Burrell resigned, and I became Pastor Emeritus.  Upon Rev Burrell's resignation, I was confirmed as Pastor of the Church.  As I had represented, I divided my time between carrying out my pastoral and organizational duties in California with carrying out pastoral duties at Prince of Peace in Ohio.

14.    In October, 2004, the Prince of Peace Baptist Church ratified in writing the employment agreement which had been made by Rev. Burrell and Mr. Neal. Attached as Exhibit C is a copy of the letter from Delores Henderson, Church Clerk, confirming my employment and acceptance of the financial package, a copy of the church resolution appointing me to life-time tenure as Pastor and giving me decision-making authority in all church matters; and a copy of the hand-written minutes by Delores Henderson, Church Clerk, confirming that the life-time call and financial package were confirmed at a duly held meeting of the church; and a copy of the Pastoral Proposal for $85,710 which was confirmed by the church.

15.    When Rev. Burrell died in July, 2005, a certain contingent in the church, including the deceased Pastor's wife and members of the deacon board who wanted to exert powers that they didn't have under the Church Constitution, began causing problems by undermining my pastoral authority.  The end result was that this contingent was very derisive.  The church was split between a majority of members who sided with me as Pastor, and a lesser number of members who sided with the deacon board.  In June, 2006, the contingent led by Neal purported to vote me out as Pastor of the church.   Over 70-80 people left the church in protest after this purported vote was taken.  Mr. Neal and another member of Prince of Peace went even further to harm me by calling members of Moriah, slandering me and accusing me of conduct which I had not engaged in.  This caused problems for me at Moriah, in that the slanderous statements made by Neal and another member to members of Moriah by telephone caused division at Moriah, and caused some members to leave, thereby diminishing the collections that were used to pay my pastor's salary.  As a result, my compensation package at Moriah has been reduced substantially.

16.   During the period that Prince of Peace employed me as Pastor, I transferred $120,000 of personal funds to the church's bank account to build up the church's financial

Pastor Humphrey Declr., p. 5

records so that it could qualify for a loan from Christian Credit Union.  I used some of the personal funds I had deposited to purchase a car, which was shipped to Ohio for my use in Ohio and to cover other expenses in traveling to and in Ohio. The car cost me $75,000. I already had a car reserved for my use in performing pastoral duties at Moriah.  Prince of Peace closed this account and took $1,000 which did not belong to it.  It has not reimbursed the $1,000.

17.    On another occasion, I loaned the church $9,000, which it has never repaid.  Attached as Exhibit D is a copy of the loan letter signed by Russell Neal, Sr., who was the chair of the finance committee at the time.  Out of the persons signing the letter, Mr. Neal is the only former member of the finance committee remaining at the church.

18.    During the period that I served as Pastor of the church, I incurred $8,404.14 in installation service travel-related expenses which the church was supposed to reimburse to me.  None of this sum has been reimbursed.  Attached as Exhibit E is a copy of the Expense Report which was submitted to the church finance committee for reimbursement.

19.    During the period that I served as Pastor of the Prince of Peace Baptist Church, the Church failed to fully pay me the wages that they promised.  In April, 2006, the Church finance committee made a tally of the Pastor's unpaid compensation for each year from 2004 to 2006, which was signed by the Treasurer, Robert Thomas, and Finance Committee members, Ludora Milbry and Wiley McDermott.  Thomas, Milbry and McDermott were among the 80 people who left Prince of Peace Baptist Church after it removed me as Pastor.  I don't know where they currently reside.  Prince of Peace owes me $49,300 in past-due wages for 2004, $44,171.00 in past-due wages for 2005, and $4,199.73 in past-due wages for 2006.  The total amount of unpaid wages is $97,670.00. This is exclusive of interest and any penalties due and owing under the California Labor Code.   Attached as Exhibit F is the Pastor's Unpaid Compensation Tally which the

1
2  Prince of Peace treasurer and finance committee composed in April, 2006, setting forth

3  the unpaid wages which are owed to me.

4        20.    Russell Neal, Sr. has given a declaration in support of Defendant's

5  motion to dismiss, purporting to have the authority to act on behalf of Prince of Peace

6  Baptist Church. Neal is not authorized to represent the church. He resigned his offices in

7  the church on February 6, 2006. Attached as Exhibit G is a copy of his letter of

8  resignation.

9        21.    The Prince of Peace Baptist Church owes me over $116,074.87 in unpaid

10 compensation which I am seeking to recover in this action. I am not asking the Court to

11 decide such matters as whether Prince of Peace was right or wrong in voting me out as

12 Pastor. I just want the money which Prince of Peace owes me for inducing me to accept

13 the employment agreement, and perform pastoral duties for the church from June, 2004

14 to July, 2006.

15        I declare under penalty of perjury under the laws of the State of California that the

16 foregoing is true and correct. Executed at Oakland, California on November 13, 2007.

17

18                 /s/ Rev. Walter Humphrey

19        _____

20             REV. WALTER HUMPHREY

21

22

23

24

25

26

27  Pastor Humphrey Declr., p. 7

28