WILLIAM E. WEISS (SBN 73108)
LAW OFFICES OF WILLIAM E. WEISS
130 Sutter Street, 7th Floor
San Francisco, California 94104
Telephone:     (415) 362-6765
Facsimile:     (415) 362-2405
Email:          weisslaw1@williameweiss.com
Attorneys for Defendant,
PRINCE OF PEACE BAPTIST CHURCH

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

PASTOR WALTER HUMPHREY

     Plaintiff,

vs.

PRINCE OF PEACE BAPTIST CHURCH, and
DOES 1-25,

     Defendants.

Case No. C 07-02790 WHA

**REPLY BRIEF OF DEFENDANT PRINCE OF PEACE BAPTIST CHURCH IN SUPPORT OF MOTION TO DISMISS**

**Date:  November 29, 2007
Time: 8:00 a.m.
Place: Courtroom 9, 19th Floor
      450 Golden Gate Avenue,
      San Francisco, CA 94102
Judge: Hon. William Alsup**

## SYNOPSIS

    Plaintiff filed an action claiming he was wrongfully terminated from the defendant Prince of Peace Baptist Church and that the defendant breached his employment contract by interfering with his pastoral work, which was an alleged breach of the covenant of fair dealing and that he was due back pay. The bottom line is plaintiff never establishes the basis for jurisdiction or venue in his brief and completely fails to negate the First Amendment argument in defendant's motion.

    After the present motion to dismiss was filed the plaintiff created a fictional account of what happened for the purpose of establishing personal jurisdiction and to avoid the dismissal of his case based on the First Amendment. While his complaint states facts and has causes of action

1

1  based solely on his employment, he now suddenly says this is a simple case of unpaid wages.

2  (Page7:10-14 Decl. Humphrey). The representations plaintiff makes in his declaration to oppose

3  the motion tread dangerously close to crossing the Rule 11 line.

4       For example, he attempts to establish personal jurisdiction by claiming in his declaration

5  that "Mr. Neal and another member of the Prince of Peace went even further to harm me by

6  calling members of Moriah, slandering me and accusing me of conduct which I had not engaged

7  in. This caused problems for me at Moriah, in that the slanderous statements made by Neal and

8  another member to members of Moriah by telephone caused division at Moriah, and caused

9  some members to leave, thereby diminishing the collections that were used to pay my pastor's

10  salary. As a result my compensation package has been reduced substantially." Then he argues in

11  his brief that slanderous statements may subject a non-resident to the jurisdiction of another state

12  citing *Calder v. Jones* 465 US 783 (1984). That case involved a suit by entertainer Shirley Jones

13  against the *National Enquirer*, a publication based in Florida. Its largest circulation was in

14  California and was pegged at 600,000 copies per issue.

15       Plaintiff fails to tell us what the "slanderous" statements where, when they were made, to

16  whom they were made and how that somehow damaged him in his employment at Moriah in

17  Oakland. Further, his complaint states the basis for personal jurisdiction here in Northern

18  California as follows: " This honorable court has subject matter jurisdiction and venue is proper

19  because the employment contract in controversy was negotiated and entered into in Oakland,

20  California" (Page 3:9-10 Plaintiff's complaint.) True, there is a brief mention of Wanda Pruitt

21  and Russell Neal Senior making slanderous and libelous statements about him (Page 6:2-4 of the

22  complaint) but there is no mention whatsoever that comments were directed to people in

23  California. One wonders why the allegations of slander in the complaint were not made specific

24  as to what the allegations of slander were and that they were made to people in California. The

25  obvious explanation is that this reason was just concocted beyond the allegations of the

26  complaint to defeat the motion. There is no other basis to explain its sudden importance. After

27  all, plaintiff now claims that this slander caused him damages. We are never told the amount, but

28  if it were that important, it would have been included. The thing that makes this more outrageous

     is he seemingly thinks that this specious allegation in his declaration, which is not part of his

2

**REPLY BRIEF OF DEFENDANT PRINCE OF PEACE BAPTIST CHURCH IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-02790 WHA**

complaint, suddenly is part of his complaint. He has added a completely new allegation and wants the court to treat it as part of his complaint so he can establish jurisdiction here.

This misleading trick certainly calls into question his claim that the contract was negotiated in Oakland. As it will be seen that is not true.

His argument about failing to allege a sufficient amount to meet the jurisdictional amount for diversity jurisdiction is also anemic. He argues that alleging the damages are over $10,000 meets the standard because "…an amount over $10,000 can be an amount over $75,000 as well" (Page 5:2 plaintiff's opposition brief). Maybe so, but the rules require an allegation of damages exceeding $75,000. Then he again attempts to establish his point by arguing that if his declaration now says his damages are $116,074.87 then diversity is established. He seems to believe that saying this in his brief now cures the defects in his complaint. Again we are treated to a poor attempt at sophistry. If he says it in his declaration then ipso facto, his complaint says it too, or so he argues.

He misleadingly argues that Pastor Burrell was an agent of the church with authority to hire him by citing Article IX(1)(a); Article IX(3)(b) and Article IX(2) of the Church Constitution to the effect that Pastor Burrell was overseer of the Church with power over the congregation and Deacons too. The falsity of that argument is proved if one looks at Article IX (g) which states that "Whenever a vacancy occurs, the church shall elect a pulpit committee of not less than five (5) nor more than seven (7) members who shall be charged with the responsibility of selecting and recommending a new pastor. This committee consists of both deacons and other members who are in good standing with the church.

Article IX (h) states: " The pastor shall be elected at a special meeting called for that purpose, public notice of which shall be given in the worship service for two (2) Sundays thereto." The church constitution is exhibit A to the declaration of Russell Neal Senior, previously filed.

Plaintiff makes a misguided attack on Mr. Neal stating that he cannot speak for the church so the court should disregard his declaration. Obviously the plaintiff misses the point that Mr. Neal is a witness with personal knowledge of the matters stated in his declaration and that he can authenticate the exhibits to his declaration. Plaintiff did not object to the introduction of any

3

of these exhibits and even relies on Ex. A so his argument attempting to discredit Mr. Neal is incongruous and that is a kind word for it.

There are other assertions in plaintiff's declaration that detract from the weight of it and consequently his credibility. For example, we are treated to much bloviating about the plaintiff's alleged accomplishments and we are shown a picture of him with President Bush. If he holds such an exalted position one wonders how his pay package was cut by Moriah church and why people left his congregation. Unfortunately we are not ever given any facts to prove his loss of status or documents to back up his claims.

Another credibility builder contained in his brief is a representation of how he put $120,000 of his personal money (or was it Moriah's?) into the bank account of the Prince of Peace in order to "build up the church's financial records so it could qualify for a loan from the Christian Credit Union." (Page 5:28; 6:1 Decl. Humphrey) This writer does not know the ecclesiastical term for this but in the legal arena it is called bank fraud. We know this money was not loaned or donated to the Prince of Peace, making the funds truly its property, because plaintiff tells us in his declaration (Page 6:1-4) that he used $75,000 of his personal money placed into the church's account to buy a car and have it shipped to Ohio. Your average person does not usually pay $75,000 cash for a car.

The plaintiff makes claims that he was not paid but never introduces any proof of what he was paid in the form of canceled checks or any other type of writing so we can determine whether there was a short fall. He makes it sound like he was only paid half his salary for the years 2004 and 2005 yet he continued working and has no documents to establish complaints about failure to pay him for all the time he was at the Prince of Peace church. He claims he was not reimbursed for travel expenses but except for a "summary" of his own making he fails to introduce any proof of the alleged expenses. Since he came up with a six-figure claim in his opposition-though not in his complaint-one wonders why he would not want to corroborate his declaration in order to show his claim of diversity jurisdiction is actually valid-not made up out of whole cloth so he can win.

Finally, defendant attaches the declaration of Doris Burrell, the widow of Pastor John Milton Burrell to establish that no job offer was made in California.

REPLY BRIEF OF DEFENDANT PRINCE OF PEACE BAPTIST CHURCH IN SUPPORT OF MOTION TO DISMISS
Case No. C 07-02790 WHA

1

**THERE IS NO PERSONAL JURISDICTION OVER DEFENDANT**

2

Defendant will not repeat the argument made in its opening brief but will point out the

3

holes in plaintiff's arguments and authorities.

4

Plaintiff attempts to establish minimum contacts by way of the alleged negotiations with

5

Re Burrell. It has been shown above that Rev. Burrell did not have authority to hire a pastor. The

6

church constitution makes it plain how a pastor is hired through a committee.

7

Next, Mrs. Burrell, states that she was present at both meetings in California and that her

8

husband never tried to hire the plaintiff or offer him a job, He was acquainted with the plaintiff

9

and told him he would retire in a few years. Plaintiff then sent his resume to the church in Ohio

10

to apply for the job. His hiring was controversial but was voted in by the congregation.

11

The negotiations were conducted in Ohio and the final approval was made in Ohio. All

12

claims for money originate in Ohio because an Ohio church allegedly breached the contract of

13

employment in Ohio. All the witnesses to the hiring and termination of plaintiff are in Ohio.

14

Plaintiff's place of employment with defendant was in Ohio. This being true there are no

15

minimum contacts established. Further, every assertion made by plaintiff about the negotiations

16

and conversations about the job are hearsay.

17

The cases cited by plaintiff for the proposition that agents can establish jurisdiction for

18

their principal are not really applicable herein. First of all, one must buy the claim that Rev.

19

Burrell and Mr. Neal were agents of the church (Despite plaintiff's claim in his brief that Mr.

20

Neal can't speak for the church) and that they conducted all the negotiations and made the

21

contract of employment in *California. Malloy v. Fong* 37 Cal.2d 356 (1951) and *Stevens v.*

22

*Roman Catholic Bishop of Fresno* 49 Cal. App.3d 877, 883 (1975) are tort cases involving car

23

accidents. They discuss whether the church could be liable for employees/clergy causing the car

24

accidents. In *Malloy*, supra the church also tried to claim charitable immunity. Those cases were

25

about vicarious liability in the main and agency.  There are no minimum contacts with this state

26

so as to fairly make the defendant, a 200 member church in Ohio litigate this specious claim in

27

California. Plaintiff's entire argument is false and made only to have his claim litigated in

28

California for his own convenience and at the expense of defendant. Obviously he is very

5

1    important and the world of litigation revolves around him. Maybe he could pop into Ohio to

2    litigate on his way back from meetings with the President or some foreign dignitary.

3    **THE COURT SHOULD NOT ADJUDICATE A MATTER INVOLVING**

4    **EMPLOYMENT OF A PASTOR WHERE HIS CONDUCT AND DISAGREEMENT**

5    **WITH THE PERFORMANCE OF ECCLESIASTICAL MATTERS ARE IN QUESTION**

6        Plaintiff argues that the court may adjudicate employment disputes between a pastor and

7    church citing *Tony and Susan Alamo Foundation v. Secretary of Labor* 471 U.S. 290 (1985).

8    Once again, his analysis is far off the mark. The *Alamo* case involved employees hired by the

9    *Alamo Foundation* to work for profit making commercial enterprises owned by the Foundation.

10       The Supreme Court ruled there that "The Foundation's businesses constitute an

11   "enterprise" within the meaning of the Act and are not beyond the Act's reach because of the

12   Foundation's religious character. This Court has consistently construed the Act liberally in

13   recognition that broad coverage is essential to accomplish the goal of outlawing from interstate

14   commerce goods produced under conditions that fall below minimum standards of decency. The

15   Act contains no express or implied exception for commercial activities conducted by religious or

16   other nonprofit organizations, and the Labor Department has consistently interpreted the Act to

17   reach such businesses. And this interpretation is supported by the legislative history." Pp. 295-

18   299.

19       The court further found that: "application of the Act to the Foundation does not infringe

20   on rights protected by the Religion Clauses of the First Amendment. The Free Exercise Clause

21   does not require an exemption from a governmental program unless, at a minimum, inclusion in

22   the program actually burdens the claimant's freedom to exercise religious rights. Here, since the

23   Act does not require the payment of cash wages and the associates received wages in the form of

24   benefits in exchange for working in the Foundation's businesses, application of the Act works

25   little or no change in the associates' situation; they may simply continue to be paid in the form of

26   benefits. But even if they were paid in cash and their religious beliefs precluded them from

27   accepting the statutory amount, there is nothing in the Act to prevent them from voluntarily

28   returning the amounts to the Foundation. And since the Act's recordkeeping requirements apply

     only to commercial activities undertaken with a "business purpose," they would have no impact

6

on petitioners' own evangelical activities or on individuals engaged in volunteer work for other religious organizations." Pp. 303-306.

Plaintiff also cites *Gipe v. Superior Court* 124 Cal. App3d 617 (1982) for the proposition that a court may adjudicate a simple matter of wages owed by a church to hired clergy. If this was all the case at bar was about that argument might have some weight. But on page 628-629 of the *Gipe* case, *supra*, the court says: "Real party argues that permitting the Labor Commissioner to represent its former minister in these proceedings constitutes an impermissible state involvement in religious affairs and will have a chilling effect on the free exercise of religion the church's discharge of a minister who fails to abide by the tenets of the church. We believe not. The argument might be persuasive if the dispute were over the question of whether or not the church had the right to discharge petitioner, but no such question is involved. The only questions appear to be whether the church is required to pay severance pay conditionally promised and whether the conditions were performed."

In the case at bar the plaintiff has alleged wrongful termination and is not just making the claim that he is owed back wages. The factual allegations of the complaint state that plaintiff conducted a "dedicated and spirited pasturing of the church and that he increased the membership, its finances, installed a new choir etc. (page 5:13-16 Complaint). He further alleges that while he was diligently building up the church some members were intent on tearing him down. He alleges that he was doing everything he could to "spiritually and physically lead the church." Paragraph 30 of the complaint states: "Plaintiff Pastor Humphrey was terminated without justification." Paragraph 32 states: "Defendant, terminated Plaintiff's employment in breach of public policy." He alleges in paragraph 31 that he was deprived of prospective career and employment opportunities, as well as other benefits. He alleges that he would have received wages and benefits had he not been wrongfully terminated. (paragraph 33 of the complaint.) These allegations take this case out of the analysis of the *Gipe* case.

## CONCLUSION

Plaintiff's entire opposition is based on hearsay, unauthenticated documents and irrelevant matters. He fails to establish the agency of Rev. Burrell who was not authorized to hire him. Whether he favored him at one time is irrelevant. Article IX of the church constitution

**REPLY BRIEF OF DEFENDANT PRINCE OF PEACE BAPTIST CHURCH IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-02790 WHA**

makes it clear that a prospective pastor must be reviewed and recommended by a pulpit committee and then approved by a special election of the church members.

He has failed to negate the First Amendment argument concerning the rule that courts will not adjudicate ecclesiastical matters such as the employment of clergy. Plaintiff's complaint says he is suing for wrongful termination and employment related issues.

He has not provided any admissible evidence of loss in any amount and certainly not enough to meet the standards of diversity jurisdiction. His complaint tells us his damages are in excess of $10,000.

Plaintiff's claim that he was slandered and thus entitled to have jurisdiction and venue in San Francisco is disingenuous. Except for the vague assertion of slander he utterly fails to establish what this alleged slander was, to whom it was communicated, and when exactly it was communicated. He cannot rely on such speculative, vague allegations to establish jurisdiction.

Plaintiff has failed to establish why venue should be here. It is clear his employment contract was made in Ohio, his employment was in Ohio, the witnesses are in Ohio, all the records of defendant are in Ohio as are all of its officers and church hierarchy. There are no minimum contacts at all that would subject defendant to litigation thousands of miles away from its location. The defendant is small church in Ohio and not a large corporation engaged in interstate commerce.

The court is respectfully requested to dismiss this case with prejudice or at the least dismiss it so it can be re-filed in Ohio where it would belong if any cause of action were to exist, which defendants deny.

DATED: November 19, 2007                LAW OFFICES OF WILLIAM E. WEISS




                                        By   /s/   William E. Weiss_____
                                             William E. Weiss
                                             Attorney for Defendant,
                                             Prince of Peace Baptist Church

**REPLY BRIEF OF DEFENDANT PRINCE OF PEACE BAPTIST CHURCH IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-02790 WHA**