IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASTOR WALTER HUMPHREY,<br><br>    Plaintiff,<br><br>  v.<br><br>PRINCE OF PEACE BAPTIST CHURCH,<br>and DOES 1–25,<br><br>    Defendants.<br>                                                              / | No. C 07-02790 WHA<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION<br>TO DISMISS WITH<br>LEAVE TO AMEND** |

**INTRODUCTION**

In this action for breach of contract, defendant Prince of Peace Baptist Church moves to dismiss the complaint of plaintiff Walter Humphrey for lack of personal jurisdiction, improper venue, First Amendment concerns, and failure to allege the proper amount in controversy. This order finds that there is sufficient personal jurisdiction and venue, at least subject to proof at trial. Because, however, the complaint fails to allege a proper amount in controversy, the motion to dismiss is **GRANTED**.

**STATEMENT**

According to the complaint, subject-matter jurisdiction is based on 28 U.S.C. 1332. Plaintiff Humphrey resides in Oakland, California, while defendant Prince of Peace Baptist Church is located in Akron, Ohio. The amount in controversy, exclusive of interest and cost, is allegedly "over $10,000," rather than over $75,000, as required by Section 1332 (Compl. ¶¶ 1, 4–5).

In October 2004, plaintiff Humphrey became employed as a pastor by the church (*id.* at ¶¶ 11–13). The complaint states that the employment contract was negotiated and entered into in Oakland (*id.* at ¶ 2). After serving as pastor, Humphrey's relationship with other church members soured. Humphrey alleges that his salaries were barely paid in 2004 and 2005, and his employment was finally terminated in late June 2006 (*id.* at ¶ 23).

Humphrey filed suit against defendant on May 29, 2007. He alleges: (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; and (iii) wrongful termination. In his prayer for relief, he seeks damages under the Labor Code and for due and unpaid wages and interest.

## ANALYSIS

**1.    DOES THE COURT HAVE PERSONAL JURISDICTION OVER DEFENDANT?**

"Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate. Where . . . the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.' In such cases, we only inquire into whether [the plaintiff]'s pleadings and affidavits make a prima facie showing of personal jurisdiction. Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002).[1]

The church claims that the Court lacks personal jurisdiction over the church. This order disagrees. California's long-arm statute permits personal jurisdiction in all instances that would not violate due process. Cal. Code. Civ. Proc. ¶ 410.10; *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Investment, Inc.*, 788 F.2d 535 (9th Cir. 1986). Due process requires "that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that

---

[1] Unless indicated otherwise, internal citations are omitted in all cites.

2

the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Ninth Circuit has applied the following three-part test to determine whether a district court can exercise personal jurisdiction (when there is no presence, domicile or consent to suit in California by the defendant):

> (1) [T]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.,* it must be reasonable.

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Limited,* 238 F.3d 1122, 1129 (9th Cir. 2003).

The first prong asks whether defendant purposefully availed itself of the privileges of conducting activities in California, the forum state. "In determining the sufficiency of a defendant's contacts, 'it is not only defendant's activities in the forum, but also actions relevant to the transaction by an agent on defendant's behalf, which support personal jurisdiction.'" *Theo H. Davis & Co., Ltd. v. Republic of the Marshall Islands*, 174 F.3d 969, 974 (9th Cir. 1998). Defendant argues that there was sufficient contact because of the contracting activities of defendant's founding pastor, John Milton Burrell, who acted as principal and agent for defendant.

"[T]he existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the resident . . . [W]e have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). In evaluating a motion to dismiss for lack of personal jurisdiction, this order can inquire into the plaintiff's pleadings and affidavits.

3

The record submitted by plaintiff will support a finding that Burrell could have been a principal/agent of defendant who had the authority to hire plaintiff and came to Oakland to do exactly that. The principal/agent relationship is determined by state law. *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002). Under California law, a church supervisory body can be liable for injuries caused by its agent, a church pastor, acting within the scope of his agency. *Malloy v. Fong*, 37 Cal. 2d 356, 372–73 (1951). Here, the church constitution stated that the pastor of the church "is, by virtue of his office, the overseer and superintendent of all of the interests of this church and of all of its departments" (Neal Decl. at 4). Furthermore, "trustees shall be subject to the pastor and deacons at all times in all matters" and "deacons . . . shall be known and recognized as the pastor's assistants or helpers in all matters pertaining to the administration of the church's affairs" (*id.* at 5). Defendant, on the other hand, claims that Burrell was *not* an agent of the church with the authority to hire plaintiff. It cites the part of the church constitution which stated, "Whenever a vacancy occurs, the church shall elect a pulpit committee of not less than five (5) nor more than seven (7) members who shall be charged with the responsibility of selecting and recommending a new pastor . . . The pastor shall be elected at a special meeting called for that purpose . . . . " Article IX(g)–(h). The wife of the now-deceased Burrell stated that "[a]t no time did my husband offer Pastor Humphrey a job at the Prince of Peace Church during [his] visit [to the San Francisco Bay Area] or attempt to recruit him for the position of pastor" (Burrell Decl. at 1).

At the present stage, however, this order must resolve evidentiary conflicts in plaintiff's favor. According to plaintiff's declaration, Burrell came to California on two occasions and discussed the church position with plaintiff (Humphrey Decl. ¶¶ 11–12):

> [In August 2003], Rev. Burrell stayed at the Woodfin Hotel in Emeryville [California] at least four days and was in contact with me each and every day, trying to convince me that I should accept the job . . . During the four days that he was in California in August 2003, Rev. Burrell met with me and my wife Shari . . . discussing the need for a qualified Pastor to replace him at Prince of Peace, and describing the financial incentives that the church could offer me to induce me to accept employment as Pastor of Prince of Peace. Rev. Burrell related that the church had supported him with a generous financial package, and that his church was ready to make a similar offer to me. I explained to Rev. Burrell that I would consider his offer but I didn't accept the

4

> offer of employment on this occasion . . . In the summer of 2004, Rev. Burrell again came to California to meet with me about accepting employment as Pastor of Prince of Peace . . . I believe that Rev. Burrell stayed at the Marriott in Oakland for several days, during which period of time he met with me several times to convince me to accept an offer of employment from Prince of Peace. During this second visit, he called from California to Ohio, got Russell Neal on the phone, and the three of us talked about a financial package that would be acceptable to me. I specifically told both Rev. Burrell and Russell Neal that because of the responsibilities that I had in California . . . I could only devote part of my time to serving as Pastor of Prince of Peace. This was acceptable to both of them. The three of us then negotiated an annual salary which was to be no less than $85,000. Based on a verbal offer of employment with a financial package of $85,000 from Rev. Burrell and Mr. Neal, I accepted employment with Prince of Peace Baptist Church during the last meeting with Rev. Burrell in Oakland, California.

In June 2004, plaintiff began working with the church and divided his time between carrying out his pastoral and organizational duties in California with carrying out his pastoral duties in Ohio (Humphrey Decl. ¶¶ 13–14). The church in Ohio confirmed the employment agreement by letter (Humphrey Decl. Exh. C). Plaintiff remained a California resident. This order finds that there was enough in the declarations to show that defendant reached out beyond Ohio and created continuing relationships and obligations with plaintiff, a California resident. There was sufficient purposeful availment.

The second prong of the Ninth Circuit test for establishing personal jurisdiction asks whether plaintiff's claim arose out of forum-related activities. The answer is clearly yes. Plaintiff claims breach of contract, breach of the covenant of good faith and fair dealing, wrongful termination, and violations of the Labor Code — claims that arose from the purported contract negotiations in California.

The third prong asks whether the exercise of jurisdiction would be reasonable. The reasonableness test weighs seven factors: (i) the extent of the defendant's purposeful interjection into the forum state's affairs; (ii) the burden on the defendant; (iii) conflicts of law between the forum and defendant's home jurisdiction; (iv) the forum's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the dispute; (vi) the plaintiff's interest in convenient and effective relief; and (vii) the existence of an alternative forum. *Roth*, 942 F.2d at 623.

There is no need to analyze the first factor separately because it is redundant with the purposeful-availment requirement. This order has already concluded that defendant purposefully availed itself of the privilege of conducting activities in California. With respect to the second factor, it would be a burden to require defendant to defend a suit in California because it is in Ohio. This factor is the strongest in defendant's favor. However, "[u]nless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Id.* at 623. This order must examine the other factors first. There does not seem to be much of a conflict with the sovereignty of the foreign state (and if this third factor were controlling, it would always prevent suit in the forum state). The fourth factor cuts in favor of plaintiff; the forum state has an interest in providing an effective means of redress for residents who negotiated a contract within the state. The fifth factor, the most efficient judicial resolution, is a draw for both parties; while plaintiff resides in California, defendant resides in Ohio. The sixth factor clearly favors plaintiff; litigating in California is certainly the most convenient and effective means of relief for plaintiff, who has been a California resident since 1977. Finally, defendant has the edge on the seventh factor — an alternative forum is available in Ohio, and it would certainly be more convenient for defendant. Weighing all of these factors, this order finds that the exercise of jurisdiction in this case is reasonable. Each party prefers to litigate in its own forum state, but defendant did purposefully avail itself and California does have an interest in providing a judicial remedy to its residents. This order finds that the Court may assert personal jurisdiction over defendant based on defendant's minimum contacts with the forum state, subject to trial of the issue.

**2. IS VENUE PROPER IN THIS DISTRICT?**

According to 28 U.S.C. 1391(a), the proper venue in a diversity case is in the "judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced." Because this order has already concluded that defendant is subject to personal jurisdiction in this district, venue is established subject to trial of the issues.

During the hearing on November 29, 2007, defendant requested transfer of the case. This order denies transfer on the ground that the defendant's notice of motion failed to state that

6

a transfer was sought. Transfer was only mentioned as a passing reference at the end of the venue argument in the memorandum. Defendant made no attempt to go through a proper Section 1404 analysis. This request is therefore denied.[2]

### 3. DOES THE FIRST AMENDMENT MANDATE DISMISSAL OF THE ACTION?

Defendant also moves for dismissal on the ground that there is no cognizable legal theory under which plaintiff may recover. A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.

Defendant argues that the subject matter of the complaint involves questions of inner-church workings and ecclesiastical matters. "It is clear that the employment and ultimate termination of the plaintiff are bound up in ecclesiastical matters central to the functioning of the defendant church" (Br. 9). The First Amendment, it says, therefore bars a district court from deciding issues affecting church employment.

While agreeing that a district court cannot inquire into church-employment decisions, this order holds that a district court is able to award unpaid wages. *See Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985) ("It is virtually self-evident that the Free Exercise Clause does not require an exemption from a governmental program unless, at a minimum, inclusion in the program actually burdens the claimant's freedom to exercise religious rights"). In *Tony and Susan Alamo Foundation*, the Supreme Court found that the Fair Labor Standards Act did not require the payment of cash wages and therefore did not require workers for a religious foundation's commercial enterprises to receive wages in violation of their religious convictions. Although this case is not exactly on point, it does allow some federal court scrutiny of wage issues in religious foundations. *See also Gipe v. Superior Court*, 124 Cal. App. 3d 617, 628–29 (1981) ("We are unable to accept the argument that requiring a church to pay its discharged minister in accordance with its contract will have at significant chilling effect

---

[2] Defendant states in its memorandum (at 7), "If venue is found to be improper, the court must either dismiss for lack of venue or transfer the case to any district in which it could have been brought. 28 U.S.C. 1404(a) allows discretionary transfer for convenience of witnesses and in the interests of justice. Under this section the defendant has the burden of showing the convenience of parties and witnesses."

7

upon the church's exercise of its right to discharge its minister on account of doctrinal or other ecclesiastical differences").

Defendant cites a number of decisions for the proposition that the First Amendment guarantees that a religious institution has the right to decide matters affecting a minister's employment. In his opposition, plaintiff requested leave to amend the complaint by eliminating the wrongful-termination claim. Plaintiff stated in his declaration, "I am not asking the Court to decide such matters as whether Prince of Peace was right or wrong in voting me out as Pastor. I just want the money which Prince of Peace owes me for inducing me to accept the employment agreement, and perform pastoral duties for the church from June, 2004 to July, 2006" (Humphrey Decl. ¶ 21). When plaintiff drops the wrongful-termination claim, the issue of the district court interfering with the church's employment decision will be rendered moot.

### 4. DID PLAINTIFF ALLEGE THE PROPER AMOUNT IN CONTROVERSY?

Plaintiff did not allege the proper amount in controversy in his complaint. He stated that "the amount in controversy exclusive of interest and cost is over $10,000.00." The jurisdictional amount was increased to $75,000 in 1996. Prior counsel needs to update his law library. Defendant's motion to dismiss must therefore be granted. This flaw is minor, however, and can be easily remedied based on the showing of new counsel at the hearing.[3]

### CONCLUSION

Because plaintiff failed to assert the proper amount in controversy, defendant's motion to dismiss is hereby **GRANTED** with leave to amend within **TEN CALENDAR DAYS**. Counsel should also amend the complaint regarding back wages and the amount in controversy as promised at the hearing.

**IT IS SO ORDERED.**

Dated: November 30, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[3] The Court recognizes that current plaintiff's new counsel is innocent of any mistake in the pleadings.

8