DOROTHY D. GUILLORY
Attorney at Law, CSBN 114891
1271 Washington Avenue, #380
San Leandro, CA 94577
(510) 639-2959 Fax: (510) 639-2961

Attorney for Plaintiff
REVEREND WALTER HUMPHREY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REVEREND WALTER HUMPHREY,<br><br>    Plaintiff,<br><br>v.<br><br>PRINCE OF PEACE BAPTIST CHURCH,<br><br>    Defendant.<br>_____/ | Case No. C 07-02790<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT, COMMON COUNTS, CALIFORNIA LABOR CODE VIOLATIONS |

Plaintiff Reverend Walter Humphrey (hereafter "Humphrey") alleges as follows:

I.
PRELIMINARY STATEMENT

   1.     By this action, Humphrey seeks monetary compensation for services he provided to Defendant Prince of Peace Baptist Church (hereafter "Prince of Peace" or "Defendant") as Pastor, for unpaid loans and for expenditures he incurred in carrying out pastoral duties, for the period June, 2004 through June, 2006.

II.
JURISDICTION

   2.     The Court has diversity jurisdiction over this case under 28 U.S.C. section 1332,

First Amended Complaint, p. 1                                                                                                      C-07-02790 WHA

in that Humphrey and Prince of Peace are of citizens of different states, and the amount in controversy, exclusive of interest and costs, is over $75,000.00.

### III.
### PARTIES

3. Humphrey has been a citizen of and domiciled in the State of California since 1977. He has owned homes in Oakland and Pittsburg, California, and currently resides with his wife, Shari Humphrey (hereafter "S. Humphrey") in Hercules, California.

    a. For the past twenty-five (25) years, Humphrey has served as Pastor of the Moriah Christian Fellowship Baptist Church (hereafter "Moriah") in Oakland, California, a 500+ member church. In 1996, under Humphrey's leadership, Moriah built a new edifice and expanded its ministries.

    b. For the past seven years, Humphrey has been Vice-President of Agape Trucking Company, an organization aimed at reducing recidivism and helping ex-offenders by hiring parolees released from prison to give them an opportunity to gain employment and become contributing members of society. The trucking company is operated out of Oakland, California.

    c. Since 2003, Humphrey has been Chairman of the National Coalition of Clergy and Community Together, a faith-based initiatives program. In this capacity, Humphrey has met with President Bush and members of his cabinet in Washington, D.C., and has traveled nationwide and statewide, meeting and brainstorming with third world leaders, administration officials, state officials, and local leaders concerning inner-city development. The hub of Humphrey's faith-based initiatives work is located in Oakland, California.

    d. In early 2003, Humphrey founded the Bay Area Inner City Leadership Alliance, a faith and community-based organization focusing on strengthening marriage and families and mentoring ex-offenders through the provision of 24/7 clean and sober living facilities. The program is operated in cooperation

First Amended Complaint, p. 2                                                                    C-07-02790 WHA

with the U.S. Department of Justice Office of Community Policing Services. The principal place of business for the Bay Area Inner City Leadership Alliance is in Oakland, California.

4.  Prince of Peace is a citizen of Ohio, and is domiciled at 844 Garth Avenue, Akron, Ohio. Defendant is a 200+ member church organization which has been in existence for the past 20 years.

  a.  Prince of Peace is financially viable, as it purchased its church edifice many years ago; and for many years, it financially supported its founding Pastor Milton Burrell (hereafter "Pastor Burrell"), now deceased, by paying the mortgage on his home, medical and retirement insurance policies for both Pastor Burrell and his wife, by paying credit card balances which Pastor Burrell and his wife accumulated at Saks Fifth Avenue and other high-end stores, by periodically purchasing new Cadillac cars for both Pastor Burrell and his wife, by giving Pastor Burrell over $25,000 annually in Anniversary funds, in addition to paying Pastor Burrell a salary of at least $85,000.00.

  b.  Although the founding Pastor is now deceased, Prince of Peace is still paying the mortgage, life, medical and retirement insurance, credit card and car note expenses, and a monthly salary of $500.00 to Pastor Burrell's wife, which it deducts from the church's Benevolent Fund.

## IV.
## FACTS COMMON TO ALL CAUSES OF ACTION

5.  In 1991, Humphrey met Pastor Burrell at a city-wide revival in Ohio.

First Amended Complaint, p. 3                                                                 C-07-02790 WHA

Humphrey was on program to preach during that revival, and after his sermon, Pastor Burrell approached Humphrey and introduced himself as the founding Pastor and organizer of Prince of Peace in Akron, Ohio. Pastor Burrell described Prince of Peace as a 300-member, established congregation; and he related that he was well respected by the members as founder and Pastor. Over the years, Pastor Burrell maintained contact with Humphrey by telephone, and the two would see and converse with each other occasionally when they met at various church-related events.

6. In August, 2003, Pastor Burrell called Humphrey in California and indicated that he was coming to California to discuss the prospect of Prince of Peace hiring Humphrey to become his successor as Pastor. Pastor Burrell was over 80 years of age at the time, he had undergone cancer surgery, was in ill health and wanted to appoint a successor for the church he founded. On this 2003 visit, Pastor Burrell stayed at the Woodfin Hotel in Emeryville at least four days and was in contact with Humphrey each and every day, trying to convince him that he should accept the job. Pastor Burrell explained that Humphrey wasn't his first choice, but was his second choice, after Rev. Tellis Chapman, Pastor of Galilee Baptist Church in Detroit, Michigan, declined Pastor Burrell's solicitation.

7. During the four days that he was in California in August, 2003, Pastor Burrell met with Humphrey and his wife S. Humphrey, one of Humphrey's Assistant Pastors at Moriah, Clarence Payne, and Elder Cleveland Jordan, discussing the need for a qualified Pastor to replace him at Prince of Peace, and describing the financial incentives that Prince of Peace could offer Humphrey to induce him to accept employment as their Pastor. Pastor Burrell related to Humphrey that Prince of Peace had supported him with a generous financial package,

and that his church was prepared to make a similar offer to Humphrey. At this juncture, Humphrey didn't accept the offer of employment and responded to Pastor Burrell that he would consider the offer, because Humphrey had his hands full with pastoral responsibilities at Moriah, with his trucking company, and with his involvement in the faith and community-based projects he was conducting through the National Coalition of Clergy and Community Together, and the Bay Area Inner City Leadership Alliance in California.

       8.     In the summer of 2004, Pastor Burrell again came to California to meet with Humphrey about accepting employment as the successor Pastor of Prince of Peace. Pastor Burrell explained to Humphrey that his health was steadily deteriorating, that he needed to transition Humphrey in as a co-Pastor, then senior Pastor and then Pastor before he resigned due to ill health. On this second visit, Pastor Burrell stayed at the Marriott in Oakland for several days, during which period of time he met with Humphrey several times for the purpose of convincing him to accept an offer of employment from Prince of Peace. Toward the end of his visit, during a meeting with Humphrey at Moriah in Humphrey's office, Pastor Burrell called from California to Ohio, got Deacon Russell Neal (hereafter "Deacon Neal") on the phone, and along with Humphrey, the three of them discussed an employment offer and talked about a financial package that would be acceptable to Humphrey. Humphrey specifically told both Pastor Burrell and Deacon Neal that because of the responsibilities he had in California, serving as Pastor of Moriah, as head of the various organizations and the business he operated, he could only devote part of his time to serving as Pastor of Prince of Peace. This was acceptable to both Pastor Burrell and Deacon Neal. Humphrey, Pastor Burrell, and Deacon Neal then negotiated an annual salary which was to be no less than $85,000. Based on a verbal offer of employment from Pastor Burrell, who was physically present in Humphrey's study, and Deacon Neal, who was on the telephone, Humphrey accepted employment with Prince of Peace. The Sunday after the employment agreement was consummated, Pastor Burrell delivered a sermon at Moriah before returning to Ohio.

First Amended Complaint, p. 5                                                                                              C-07-02790 WHA

9. In June, 2004, Humphrey began employment at Prince of Peace as the co-Pastor, working with Pastor Burrell. Humphrey assisted Pastor Burrell with pastoral duties and served as co-Pastor until October, 2004. As agreed, Humphrey divided his time between carrying out pastoral and organizational duties in California with carrying out pastoral duties at Prince of Peace in Ohio.

10. On or before October, 2004, Pastor Burrell resigned due to his deteriorating health. In October, 2004, Prince of Peace Baptist Church ratified in writing the employment agreement which had been made by Pastor Burrell and Deacon Neal with Humphrey. Prince of Peace prepared a church resolution appointing Humphrey to life-time tenure as Pastor with decision-making authority in all church matters, and confirmed that Defendant Prince of Peace would pay to Humphrey $85,710 annually as compensation for his services. The compensation package included monies for travel, educational and professional expenses.

11. From October, 2004, to June, 2006, Humphrey satisfactorily fulfilled his duties and responsibilities as Pastor of Prince of Peace, and performed services as Pastor of Prince of Peace. However, Prince of Peace failed to comply with the promises made to Humphrey, as follows:

    a. Defendant Prince of Peace failed and refused to pay to Humphrey the wages and other compensation which it promised and which it was obligated to pay to Humphrey. Defendant Prince of Peace owes Humphrey $49,300 in compensation for 2004, $44,171.00 for 2005, and $17,199.73 for 2006. The total amount of unpaid compensation, exclusive of interest and penalties, is $110,670.73. In April, 2006, Defendant's Finance Committee composed a written tally of the compensation which Prince of Peace owed to Humphrey, signed by the Church Treasurer and Finance Committee members, confirming that as of that date, it owed $97,670.00 to Humphrey. An additional $13,000 for the months of May and June, 2006, were not included in the written tally.

First Amended Complaint, p. 6      C-07-02790 WHA

  b. At Prince of Peace's request, Humphrey loaned Prince of Peace $120,000 of his personal funds to deposit in a bank account so that Prince of Peace could qualify for a loan from Christian Credit Union. Prince of Peace promised and represented that Humphrey or his wife would be the only ones authorized to spend the funds deposited into this account. Prince of Peace closed down the account and failed and refused to return $1,000 which belonged to Humphrey.

  c. Based on Prince of Peace's promises and representations that it would compensate Humphrey $13,100 annually in travel, educational and professional expenses, Humphrey paid $29,500 down on the purchase of a car for his use in traveling to and from and throughout the State of Ohio and took out a automobile loan which requires him to pay $2000 monthly until the $75,000 loan balance is satisfied. In addition, Humphrey incurred $3000 in shipping charges and an additional $8,404.14 in travel-related expenses for Defendant's installation service. Prince of Peace has not reimbursed Humphrey for any of these expenses.

  d. Humphrey loaned Prince of Peace $9,000, which Defendant confirmed in an August 29, 2005, writing signed by members of the church finance committee. Prince of Peace has not repaid the loan to Humphrey.

  12. In July, 2005, Pastor Emeritus Burrell died. Upon his death, a contingent in the church, including the deceased Pastor's wife, who wants Prince of Peace to continue paying her $500.00 monthly salary, mortgage, credit cards, insurance premiums, and retirement, along with Deacon Neal and members of the deacon board, acting in excess of their authority, started causing problems by undermining Humphrey's pastoral authority and interfering with his duties and responsibilities. The end result was that Prince of Peace was split between members who sided with Humphrey as Pastor, and other members who sided with Deacon Neal and Mrs. Burrell.

  13. In June, 2006, the contingent led by Deacon Neal purported to vote Humphrey out as Pastor of Prince of Peace and took over the church, precluding and preventing Humphrey

First Amended Complaint, p. 7  C-07-02790 WHA

from continuing as Pastor. Approximately 70-80 people left Prince of Peace in protest after this purported vote was taken. Humphrey asserts that this action was taken in an attempt to avoid paying him the compensation which Defendant owes.

14. Prince of Peace owes Humphrey over $236,575.13 in unpaid compensation, loans and expenses, exclusive of interest and penalties, which Humphrey is seeking to recover in this action. Humphrey is not asking the Court to decide ecclesiastical matters, such as whether Prince of Peace was right or wrong in voting him out as Pastor. By this action, Humphrey just seeks to recover wages, other compensation, unpaid loans and unreimbursed expenses owed to him by Prince of Peace.

## FIRST STATE CAUSE OF ACTION
## BREACH OF CONTRACT

15. Humphrey incorporates by reference as though fully set forth the allegations of paragraphs 1-14.

16. As set forth herein, on or about June, 2004, Humphrey and Prince of Peace entered into an oral employment agreement in Oakland, California in which it was agreed that Humphrey would succeed Pastor Burrell as Pastor of Prince of Peace, with a compensation package of $85,710 or more annually. The agreement was ratified in writing by Prince of Peace in October, 2004.

17. The terms of the employment agreement were clear enough that both Humphrey and Prince of Peace understood what each was supposed to do, and that in exchange for Humphrey's performance of pastoral duties and responsibilities, Prince of Peace would pay the agreed upon compensation.

18. Humphrey did all, or significantly all, of the things that the employment agreement required him to do. After June, 2006, he was excused from having to do those things because he was precluded from doing so by Deacon Neal and his contingent of church members.

19. All conditions required for Prince of Peace's performance under the

First Amended Complaint, p. 8                                                          C-07-02790 WHA

employment agreement have occurred, but Prince of Peace has failed and refused to compensate Humphrey in accordance with the employment agreement.

20. Humphrey has been harmed by Prince of Peace's failure and refusal to fully compensate him as agreed, causing him to suffer a substantial monetary loss.

21. Under California Civil Code Section 3300, for breach of an obligation arising from contract, the measure of damages is an amount that will compensate the aggrieved party for all damages likely to result from the breach. Under this cause of action, Humphrey is asking for an award of $$236,575.13, plus interest.

## SECOND STATE CAUSE OF ACTION
## COMMON COUNT - GOODS AND SERVICES RENDERED

22. Humphrey incorporates by reference as though fully set forth the allegations of paragraphs 1-14.

23. As set forth herein, Prince of Peace requested, by words or conduct, that Humphrey perform pastoral services for Prince of Peace from June, 2004 to June, 2006; that Humphrey incur expenses for travel, educational and professional development based on a promise to reimburse; that Humphrey deposit monies into an account so that Prince of Peace could qualify for a loan from Christian Credit Union; and that Humphrey loan Defendant $9,000 for the benefit of Prince of Peace.

24. Humphrey performed pastoral services for Prince of Peace from June, 2004 to June, 2006 as requested; incurred travel, educational and professional development expenses based on the promise to reimburse; deposited $120,000 into an account so that Defendant could qualify for a loan, as requested; and loaned $9,000 to Defendant as requested.

25. Prince of Peace has not paid Humphrey $110,670.73 in compensation which Humphrey earned while serving as Pastor of Defendant; has not repaid $115,904.40 for travel, educational and professional development expenses; has not paid $1,000 belonging to Humphrey which it took from a bank account it closed; and has not repaid the $9,000 loan which Humphrey gave it.

26. The reasonable value of the good and services provided is $236,575.13, exclusive of interest.

### THIRD STATE CAUSE OF ACTION
### COMMON COUNT - OPEN BOOK ACCOUNT

27. Humphrey incorporates by reference as though fully set forth the allegations of paragraphs 1-14.

28. As set forth herein, Humphrey and Prince of Peace were engaged in a financial transaction in which Humphrey was to be paid monies for services he performed as Pastor of Defendant, was to be reimbursed for loans he gave to Defendant and for expenses he incurred in carrying out his duties and responsibilities as Pastor.

29. Humphrey and Prince of Peace kept an account of the debits and credits involved in the transactions.

30. Prince of Peace owes Humphrey money on the account.

31. The amount of money that Defendant Prince of Peace owes to Humphrey is $110,670.73 in earned wages and compensation; $115,904.40 in unreimbursed expenses; $1,000 which Defendant took from a bank account it closed; and $9,000 in loan proceeds, totaling $236,575.13, exclusive of interest.

### FOURTH STATE CAUSE OF ACTION
### COMMON COUNT - MONEY HAD AND RECEIVED

32. Humphrey incorporates by reference as though fully set forth the allegations of paragraphs 1-14.

33. Prince of Peace asked Humphrey for loans which were to be used for the benefit of Defendant, and promised to repay them. .

34. Humphrey provided loan monies for the use of Prince of Peace with the expectation of being repaid.

35. Prince of Peace has failed and refused to repay to Humphrey $10,000 in loan proceeds.

FIFTH STATE CAUSE OF ACTION
NONPAYMENT OF WAGES IN VIOLATION OF CALIFORNIA LABOR CODE

36. Humphrey incorporates by reference as though fully set forth the allegations of paragraphs 1-14.

37. Humphrey performed work for Prince of Peace.

38. Prince of Peace owes wages and compensation to Humphrey under the terms of employment.

39. The amount of unpaid wages and compensation is $110,670.73.

40. Humphrey's employment ended on June 30, 2006. Prince of Peace failed to pay all wages and compensation due to Humphrey by June 30, 2006 as required under California Labor Code section 201. The daily wage rate at the time Humphrey's employment ended was $340.12. In addition to the $110,670.73 in unpaid wages, Prince of Peace owes Humphrey $340.12 per day from June 30, 2006 to July 30, 2006, as a waiting time penalty under California Labor Code section 203.

Humphrey prays for the following damages:

1. Actual damages according to proof;
2. Interest on damages from the time nonpayment began;
3. Waiting time penalties under the California Labor Code;
4. Attorney fees and costs under the California Labor Code;
5. Such other relief as the Court deems appropriate.

Dated:  December 10, 2007

*/s/ Dorothy D. Guillory*

_____

DOROTHY D. GUILLORY
Attorney for Plaintiff Rev. Walter Humphrey

First Amended Complaint, p. 11                                                                               C-07-02790 WHA

PROOF OF SERVICE

I declare that I am over the age of eighteen (18) years, and I am not a party to this action. My business address is 1271 Washington Avenue, San Leandro, California, 94577. On December 10, 2007, I served the following document:

PLAINTIFF'S FIRST AMENDED COMPLAINT

by placing the document in a pre-addressed, stamped envelopes and placing it in the United States mail, addressed to the party listed below:

> William E. Weiss
> Law Offices of William E. Weiss
> 130 Sutter Street, 7th Floor
> San Francisco, CA  94l04

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at Oakland, California on December 10, 2007.

*/s/ Donna Wright*

_____

DONNA WRIGHT