DOROTHY D. GUILLORY, ESQ. (SBN 114891)
1271 Washington Ave #380
San Leandro, CA 94577
Telephone:    (510) 639-2959
Facsimile:    (510) 639-2961

Attorney for Plaintiff,
*Pastor Walter Humphrey*

WILLIAM E. WEISS (SBN 73108)
LAW OFFICES OF WILLIAM E. WEISS
130 Sutter Street, 7th Floor
San Francisco, California 94104
Telephone:    (415) 362-6765
Facsimile:    (415) 362-2405

Attorney for Defendant,
*PRINCE OF PEACE BAPTIST CHURCH*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REVEREND WALTER HUMPHREY,<br><br>    Plaintiff,<br><br>vs.<br><br>PRINCE OF PEACE BAPTIST CHURCH,<br><br>    Defendant. | Case No. C 07-02790 WHA<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>**DATE:**    September 8, 2008<br>**TIME:**    2:00 p.m.<br>**PLACE:** Courtroom 9, on 19th fl. |

The parties jointly submit the following proposed Final Pretrial Conference Order:

**I.    BRIEF DESCRIPTION OF THE SUBSTANCE OF CLAIMS AND DEFENSES**

**PLAINTIFF'S CLAIMS**

Plaintiff Rev. Walter Humphrey ("Rev. Humphrey"), an ordained Baptist minister, claims that Prince of Peace Baptist Church owes him unpaid wages and compensation in the sum of

1

**JOINT PRETRIAL CONFERENCE STATEMENT**

approximately $130,613, exclusive of interest and Labor Code penalties for services he rendered from June, 2004, up to and including October, 2006, as Co-Pastor and Pastor of the Prince of Peace Baptist Church in Akron, Ohio.  Plaintiff's theories of liability include breach of contract, common count for goods and services rendered, common count for open book account, common count for money had and received, and California Labor Code violations.

At the invitation, insistence and enticement of Prince of Peace's authorized representatives, including its founding Pastor, Rev. Humphrey accepted employment as the co-Pastor of Prince of Peace Baptist Church, a non-profit religious corporation, in June, 2004.  He was promised a compensation package of $85,710.00 annually.

When the founding Pastor, Rev. Burrell retired, in September, 2004, Rev. Humphrey was installed as Pastor of Prince of Peace.  In October, 2004, Prince of Peace, by written vote memorialized in church minutes, formally ratified its employment of Rev. Humphrey as Pastor with life-time tenure, and confirmed in writing its obligation to pay him $85,7l0.00 annually for pastoral services he provided, excluding love gifts and anniversary gifts.  However, at the end of 2004, Prince of Peace owed Rev. Humphrey $46,300.00.

In April, 2005, Prince of Peace passed a resolution ratifying the employment of Rev. Humphrey as Pastor for Life, and specifically recited in the Resolution that it was a binding contract.

After he was already employed, in March, 2005, members of the deacon board at Prince of Peace offered to raise $50,000 to entice Rev. Humphrey to relocate to Akron, Ohio.  The offer was memorialized in church minutes.  However, Prince of Peace never came up with the relocation money, and Rev. Humphrey maintained his domicile in California.

Rev. Humphrey was induced to accept employment at Prince of Peace based on financial statements which Prince of Peace gave him to consider prior to accepting employment.  The

2

**JOINT PRETRIAL CONFERENCE STATEMENT**

statements painted a rosy picture of the church finances. However, by May, 2005, Rev. Humphrey discovered that church finances were not managed well in the past because its expenditures were not under control, that Prince of Peace was not credit-worthy and couldn't get any loans for church renovation projects. In particular, the church expenditures were not under control in large part because Prince of Peace was still paying the salary, utility bills, mortgage, and other expenses of former Pastor Burrell and his wife, including Saks Fifth Avenue bills, and there were other expenditures which were unaccounted for.    Rev. Humphrey attempted to impress upon the church officials that they were breaching their financial obligations to him by insisting on paying the salary and expenses of the retired Pastor and his wife.   The church officials responded that they were going to get a real property loan to correct the situation.

In May, 2005, Prince of Peace asked Rev. Humphrey for a loan of $9,000 for the purpose of improving the church property for an appraisal.   The loan obligation and Prince of Peace's obligation to repay it were memorialized in a 9/1/05 signed writing with the church seal on it. Rev. Humphrey loaned the $9,000 to Prince of Peace, but it has never been repaid.

Prince of Peace then asked Rev. Humphrey to assist it in acquiring a loan, secured by its property. After consulting with Prince of Peace's trustees and finance committee, and a bank loan officer in Ohio, in August, 2005, Rev. Humphrey arranged for loan proceeds of $121,000 to be placed in a special maintenance account, to improve Prince of Peace's financial picture and prospects of getting a loan to place it back on track with its finances, and to use $20,000 to put down on a vehicle for use in traveling to/from and in Ohio. The only persons with access to this special account were Rev. Humphrey and his wife, Shari. Prince of Prince was not supposed to withdraw any of these monies from the special account, but withdrew $1,000 without repayment. Prince of Peace never obtained the real property loan.

In reliance on Prince of Peace's written obligation to repay him up to $8,100 in travel

3

**JOINT PRETRIAL CONFERENCE STATEMENT**

expenses annually, and up to $5,000 in educational and professional expenses annually, Rev. Humphrey incurred up to $8,100 in travel expenses in 2005, which have not been reimbursed, and up to $5,000 in educational and professional expenses, which have not been reimbursed. At the end of 2005, Prince of Peace owed Rev. Humphrey another $44,171.00 in unpaid compensation.

Rev. Humphrey continued providing pastoral services for Prince of Peace until a contingent of the deacon board ousted him in October, 2006. For 2006, Prince of Peace owes Rev. Humphrey $30,142.37.

Rev. Humphrey has repeatedly asked Prince of Peace to pay him the compensation which he is due, to no avail.

**DEFENDANT'S CONTENTIONS**

Defendant Prince of Peace contends that plaintiff fraudulently represented that he would work full time as Pastor of defendant church which is located in Akron, Ohio. This is evidenced by a ceremony here in the Bay Area where he was the honoree at a going away celebration; told people he was going to move to Ohio and that he would be replaced by another pastor and by remarks he made at his installation in Ohio.

It turns out that plaintiff was mainly interested in using defendant's bank accounts to move money back and forth and enhance his career. He spent little time in Ohio which was meant he could not officiate at weddings, funerals, visit parishioners in the hospital, render pastoral counseling to parishioners; take part in prayer meetings or take part in other church functions.

During his stint in Ohio he did manage to wire $100,000 from his former church (gained in a property sale) into the maintenance account of defendant for the purpose of making it creditworthy such that it could obtain credit, he says.

The maintenance account was used to pay him and provide for other expenses of living. This is a way of avoiding income tax liability as paying a pastor's "expenses" is not considered a

4

**JOINT PRETRIAL CONFERENCE STATEMENT**

taxable event.  He used $25,000 of this money to purchase a $75,000 Range Rover, which he had shipped to Ohio at the cost of $2000. He then sent the vehicle back to California where he drives it today. He allegedly wired the remaining $75,000 back to the church in the Bay Area. That church's name is Moriah Christian Fellowship. He moved other money back and forth and made other "loans" to defendant church.

Currently he seeks payment of wages and other expenses. Defendant contends it does not owe any more wages than it paid him as he was absent for a good deal of the time. Further plaintiff has failed to document any of the expenses he has claimed, promising in discovery to provide such proof later. Since he has not done that defendant filed motions in limine to exclude such evidence.

Defendant was sued in California to further inconvenience it and to cause it to settle because of the costs of defending the case in California. Plaintiff's entire basis for venue here is based on alleged conversations with Pastor Burrell who is now deceased.

II.     **STATEMENT OF RELIEF SOUGHT**

**PLAINTIFF'S RELIEF**

Rev. Humphrey seeks unpaid compensation in the sum of  $130, 613, interest on that sum from October, 2006 to the date of judgment at the rate of 10% per annum, and applicable California Labor Code penalties.  If the prevailing party, Plaintiff will be also seeking attorney's fees and costs under the California Labor Code.

**DEFENDANT'S RELIEF**

Defendant seeks judgment of dismissal.

III.    **ALL STIPULATED FACTS**

Plaintiff was removed as Pastor of Prince of Peace in October, 2006.

IV.    **LIST ALL FACTUAL ISSUES WHICH REMAIN TO BE TRIED**

Plaintiff and Defendant are in dispute about the factual issues which remain to be

5

**JOINT PRETRIAL CONFERENCE STATEMENT**

tried.

**PLAINTIFF'S FACTUAL ISSUES**:

Plaintiff's factual issues follow the counts of the complaint:

**COUNT ONE - Breach of Contract**

1. Whether Prince of Peace agreed to pay Rev. Humphrey $85,710.00 in annual compensation, exclusive of gifts and anniversaries, for serving as Pastor of Prince of Peace.

2. Whether Rev. Humphrey agreed to perform services as Pastor of Prince of Peace for the compensation of $85,710.00 annually.

3. Whether the terms of the agreement were clear enough that both Rev. Humphrey and representatives of Prince of Peace understood what each was required to do.

4. Whether a contract was formed as a result of agreements between Prince of Peace and Rev. Humphrey.

5. Whether Rev. Humphrey did substantially all of the things that he was required to do as Pastor of Prince of Peace.

6. Whether Prince of Peace failed to pay Rev. Humphrey in full for the years 2004, 2005 and 2006.

7. Whether Rev. Humphrey suffered monetary damages as a result of Prince of Peace not paying him.

8. The amount of money in damages that is owed to Rev. Humphrey.

**Count Two - Common Counts (Goods or Services Rendered)**

1. Whether Prince of Peace asked Rev. Humphrey to perform services for it as co-Pastor and Pastor.

2. Whether Rev. Humphrey performed the services as requested.

3. Whether Prince of Peace paid Rev. Humphrey for the services he performed.

4. The reasonable value of the services that Rev. Humphrey performed.

6

**JOINT PRETRIAL CONFERENCE STATEMENT**

**Common Counts - Open Book Account**

1. Whether Prince of Peace and Rev. Humphrey had a financial transaction.

2. Whether Prince of Peace or Rev. Humphrey kept track of the debits and Credits involved in that transaction.

3. Whether Prince of Peace owes Rev. Humphrey money on that account.

4. The amount of money that Prince of Peace owes.

**Common Counts - Money Had and Received**

1. Whether Prince of Peace received loan monies from Rev. Humphrey which were intended for its use.

2. Whether the loan monies were used for the benefit of Prince of Peace.

3. Whether Prince of Peace gave the loan monies back to Rev. Humphrey.

**Count Four - Labor Code Violations**

1. Whether Rev. Humphrey performed work for Prince of Peace.

2. Whether Prince of Peace owes Rev. Humphrey wages under the terms of employment.

3. The amount of the wages, including penalties.

**DEFENDANT'S FACTUAL ISSUES:**

1. The terms and conditions of plaintiff's employment.

2. Whether plaintiff fulfilled the terms of his contract.

3. Whether plaintiff used the defendant's maintenance account for proper purposes.

4. The amount of money owed to plaintiff if any

5. Whether plaintiff represented that he would work in Ohio full time.

6. What plaintiff was doing when he was supposed to be in Ohio working.

7. The source of money plaintiff allegedly loaned to defendant.

8. Representations plaintiff made to people at Moriah about the position he took at defendant church.

9. Representations plaintiff made to people at defendant church about his tenure there.

## V.  EACH PARTIES' WITNESSES TO BE CALLED FOR ITS CASE IN CHIEF

**PLAINTIFF'S WITNESSES**:

**Rev. Walter Humphrey -** Testimony relating to his qualifications as a minister, offer of employment by Prince of Peace and his acceptance of employment offer, writings memorializing terms and conditions of employment agreement, duties he performed as Pastor of Prince of Peace, loans made to church, expenses incurred, nonpayment of wages, failure to reimburse for loans and expenses.

**Shari Humphrey -** Testimony relating to offer of employment by Prince of Peace, Rev. Humphrey's performance of duties as Pastor, loans made to the church, church's failure ot pay loans, nonpayment of wages, expenses incurred by Rev. Humphrey, church's failure to reimburse.

**Geneva Hill -** Testimony relating to her employment as church administrator, her job as custodian of records, her role in drawing up agreements made by Prince of Peace to compensate Rev. Humphrey, the execution of those agreements, church records concerning unpaid compensation.

Plaintiff has properly disclosed all of the above-named witnesses in accordance with FRCP Rule 26(a)(1)(A), FRCP 26(A)(3), and the Court's Pre-Trial Order, paragraph 1.

Plaintiff objects to seven (7) defense witnesses whom Defendants only disclosed on August 27, 2008, 11 days before the Pre-Trial Conference, in violation of FRCP Rule 26(a)(1)(A), FRCP 26(A)(3), and the Court's Pre-Trial Order, paragraph 1.   These alleged witnesses consist of Rev. Humphrey's ex-wife, Claudia Humphrey, who made nasty criminal accusations against Rev. Humphrey in connection with a bitter divorce and custody battle, and her allies, Wanda Pruitt, Eileen Hardware, Steven Porter, Mia Medlin, Keisha Bishop, and a former Associate Pastor of Moriah, Chris Williams.  Most are disgruntled former members and associates of Moriah Christian Fellowship, Rev. Humphrey's Oakland, California church, who left after Rev. Humphrey and Claudia Humphrey divorced.   Rev. Humphrey has since remarried.  None of these late-disclosed witnesses have any relevant information pertinent to the factual or legal issues in this case; and the attempt to "sneak them in under the radar" at trial through unfair surprise is for the sole purpose of attacking and attempting to besmirch Rev.

8

**JOINT PRETRIAL CONFERENCE STATEMENT**

Humphrey's character with divorce-related opinion, hearsay and vitriole. Plaintiff is filing a formal objection to Defendant calling these seven (7) late-disclosed witnesses, and asks the Court to exclude them at trial.

**DEFENDANTS' WITNESSES**:

1.      Russell Neal Sr.- He will be called to dispute the contention that plaintiff was only going to work part time, the type and purpose of church bank accounts, the accounting relevant to all checks written by defendant to plaintiff and checks signed by defendant, explanation of other church documents regarding plaintiff's employment and church procedure including church constitution and founding documents, corporate documents and to recount statements plaintiff made, conduct of plaintiff while present in Ohio.

2.      Russell Neal Jr.- Same as Russell Neal Jr. plus authenticating documents and impeachment evidence conversations of the Deacons regarding plaintiff's employment, contact with governing body concerning disputes with plaintiff.

3.      Wanda Pruitt-She will testify about comments plaintiff made about his full time employment in Ohio, loans he allegedly made to defendant and other conduct supporting the claims that plaintiff made suspicious financial transactions with Moriah Christian Fellowship's money. She will also testify about plaintiff's expenses for his installation. She may also provide impeachment evidence.

4.      Pastor Chris Williams-He will be called to testify about plaintiff's employment with Moriah and other churches plus statements plaintiff made about his employment and various financial transactions.

5.      Eileen Hardware: She will testify about statements plaintiff made concerning his employment in Ohio and in California plus what he said were the terms and conditions of his employment. She may serve as an impeachment witness as well.

6.      Pastor Claudia Humphrey-She will be called to testify about plaintiff's convictions for domestic violence and questionable financial transactions he made.

7.      Steven Porter: He was head of the Deacon Board at Moriah church and on the finance

9

**JOINT PRETRIAL CONFERENCE STATEMENT**

committee. He is expected to testify about the deed of trust for property at 1537 34th Street, the re-financing of the property at 34th and San Pablo Streets and plaintiff's use of money obtained there from. He can also testify about plaintiff's statements about his employment in Ohio and in California.

8.    Mia Medlin: She was on the finance committee at Moriah and can testify about plaintiff's use of money at Moriah.

9.    Keisha Bishop: She is expected to testify that she signed a note for monies to plaintiff's retirement. The conditions of the note were that plaintiff would leave the church if this witness and others signed the note so he could have the money from the sale of the White Oak Grove property for his retirement and in recognition of what he did for the church. He did not retire and in fact came back to the church as senior pastor.

**VI.    JOINT EXHIBIT LIST**

**Listed in Appendices.**

**VII.    LEGAL ISSUES**

Plaintiff and Defendant are in dispute concerning the legal issues:

**PLAINTIFF'S LEGAL ISSUES**:

1.    Whether Prince of Peace breached a contract with Rev. Humphrey.

2.    Whether Prince of Peace owes Rev. Humphrey money for services Rev. Humphrey rendered.

3.    Whether Prince of Peace owes Rev. Humphrey money on an open book account.

4.    Whether Prince of Peace owes loan monies which it received from Rev. Humphrey.

5.    Whether Prince of Peace owes unpaid wages to Rev. Humphrey.

5.    The amount that Prince of Peace is obliged to pay to Rev. Humphrey.

**DEFENDANT'S LEGAL ISSUES:**

1.    Whether plaintiff breached his contract with defendant.

2. Whether plaintiff is entitled to any damages.

3. Whether plaintiff committed fraud in the negotiation and performance of his contract with defendant.

4. Whether this case is properly venued in the Northern District of California.

5. Whether defendant had sufficient contacts with this forum to allow this case to be brought in this forum.

This case is essentially one for breach of contract alleging that the plaintiff was not paid wages due and other benefits. There are no exotic legal issues and defendant will rely on pattern jury instructions based on state law which cover breach of contract and the other causes of action for money had and received etc.

DATED: August 27, 2008

/s/ Dorothy D. Guillory

By: _____
    Dorothy Davis Guillory, Esq.
    Attorney for Plaintiff
    *REVEREND WALTER HUMPHREY*

DATED: August 27, 2008         LAW OFFICES OF WILLIAM E. WEISS

By: _____
    William E. Weiss
    Attorney for Defendant
    *PRINCE OF PEACE BAPTIST CHURCH*

It is so ordered

DATED:

_____
WILLIAM H. ALSUP,
Judge of the United States District Court

11

**JOINT PRETRIAL CONFERENCE STATEMENT**

APPENDICES
To Joint Proposed Pre-Trial Statement
Case No. C 07-02790

**PLAINTIFF'S LIST OF EXHIBITS**

| Ex. No. | Description of Exhibit | Offered | Rec'd | Limitations |
|---------|------------------------|---------|-------|-------------|
| 001 | Prince of Peace Financial Statement 2001 | | | |
| 002 | Prince of Peace Financial Statement 2002 | | | |
| 003 | Prince of Peace Financial Statement 2003 | | | |
| 004 | Prince of Peace Church Constitution | | | |
| 006 | 2/3/04 Canceled check from Walter Humphrey to Moriah | | | |
| 005 | 2/20/04 Letter to Rev. Humphrey fr/Rev. Dr. Milton Burrell & Delores Henderson | | | |
| 007 | Excerpts from 5/2/04 47th Burrell Anniversary and Retirement Program | | | |
| 008 | 9/21/04 Installation Services Program | | | |
| 009 | 10/4/04 Minutes of Church Officers by Delores Henderson | | | |
| 010 | 10/4/04 Minutes of Prince of Peace Church Body | | | |
| 011 | 10/8/04 Letter to Rev. Humphrey fr/Delores Henderson | | | |
| 012 | 1/20/05 canceled check to Moriah from Walter Humphrey | | | |
| 013 | 3/05 Minutes of Church Officers re raising $50,000 to relocate | | | |
| 014 | 4/27/05 Resolution Appointing Rev. Humphrey to Lifetime Tenure | | | |
| 015 | 5/25/05 Check fr Walter Humphrey to Moriah | | | |
| 016 | 5/28/05 Wire Transfer of $9,000 | | | |

12

**JOINT PRETRIAL CONFERENCE STATEMENT**

| | | |
|---|---|---|
| 1 | 017 | 8/8/05 Payroll Advance to Geneva Hill |
| 2 | 018 | Moriah Press Release re Humphrey's Lifetime Tenure |
| 3 | | |
| 4 | 019 | 8/26/05 $100,000 Wire Transfer to Prince of Peace |
| 5 | 020 | 8/29/05 Certification re loan repayment to Shari Humphrey |
| 6 | | |
| 7 | 021 | 9/8/05 Canceled Check to Pastor Chris Williams for honorarium |
| 8 | | |
| 9 | 022 | 9/21/05 Canceled Check to Dr. Gordon A. Humphrey, Sr. |
| 10 | | |
| 11 | 023 | 9/23/05 Canceled check to Dr. Wallace Hartsfield |
| 12 | 024 | 9/23/05 to Pleasant Green for airfare |
| 13 | 025 | 9/23/05 canceled check to Dr. Jarvis Collier |
| 14 | | |
| 15 | 026 | 11/6/05 Canceled Check to Dr. A.B. Emerson |
| 16 | 027 | 11/8/05 Providian/Washington Mutual Card Services Bill for Shari Humphrey & Expense Tally |
| 17 | | |
| 18 | 028 | 9/25/05 Installation Services Program |
| 19 | 029 | 10/5/05 Three-months Assets, Liabilities, Income, Disbursements |
| 20 | | |
| 21 | 030 | 10/6/05 Cole European downpayment canceled check |
| 22 | 031 | 2005 1099 issued by Prince of Peace to Rev. Humphrey |
| 23 | | |
| 24 | 032 | 3/24/06 check from Walter Humphrey to Moriah |
| 25 | 033 | 4/9/06 Pastor's Unpaid Compensation Tally for 2004 |
| 26 | | |
| 27 | 034 | 4/9/06 Pastor's Unpaid Compensation Tally for 2005 |
| 28 | | |

13

**JOINT PRETRIAL CONFERENCE STATEMENT**

| | | |
|---|---|---|
| 1 | 035 | 4/9/06 Pastor's Unpaid Compensation Tally for 2006 |
| 2 | | |
| 3 | 036 | Jan-Oct, 2006 Compensation Tally |
| 4 | 037 | 7/15/06 Check returning $76,000 to Moriah |
| 5 | 038 | 2006 1099 issued by Prince of Peace to Rev. Humphrey |
| 6 | 039 | AMEX Statements re travel to/from Ohio |
| 7 | 040 | Crowne Plaza Bill for Hotel Stay |
| 8 | 041 | Russell Neal's Declaration previously filed |
| 9 | 042 | Amended 1099 issued in 2008 |
| 10 | 043 | Chart and Summary, Opening Statement |
| 11 | 044 | Chart and Summary, Closing Statement |

1  **DEFENDANT'S LIST OF EXHIBITS**

2  Ex. No.         Description of Exhibit              Offered        Rec'd   Limitations

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PRETRIAL CONFERENCE STATEMENT**